**DELPRO COMPANY, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD OF the U. S. A. et al., Defendants.**

**Civ. A. No. 80–517.**

United States District Court,
D. Delaware.

March 6, 1981.

Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for plaintiff; Ray J. Schoonhoven, Philip V. Carter, and Valerie J. Hoffman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel.

James W. Garvin, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., Alice Daniel, Asst. Atty. Gen., Sandra M. Schraibman, and Daniel J. Metcalfe, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Delpro, Inc., ("Delpro"), a Delaware corporation, and a wholly owned subsidiary of Trailer Train Company ("Trailer Train"), is engaged in the business of repairing railroad freight cars. Trailer Train, also a Delaware corporation, is engaged in the business of leasing railroad cars to rail-

roads. The stock of Trailer Train is owned by twenty-nine operating railroads, the trustees of two former operating railroads and one freight forwarding company. Delpro's railroad car repair work is done exclusively for Trailer Train and for the Railbox Company, another subsidiary of Trailer Train. Trailer Train owns two other subsidiaries engaged in the repair of railroad equipment and also contracts out to independent repair shops a substantial amount of work.

On August 20, 1980, the Brotherhood Railway Carmen of the United States and Canada ("Railway Carmen") filed with the National Mediation Board ("NMB" or "Board") an application pursuant to Section 2, Ninth, of the Railway Labor Act[1] requesting the NMB to investigate an alleged representation dispute among the employees of Delpro. Subsequent to the Railway Carmen's application Delpro submitted to the NMB written material in support of its position that it is not a "carrier" within the meaning of the Railway Labor Act[2] and that it therefore is not subject to the jurisdiction of the NMB. The NMB issued a Determination of Jurisdiction on October 1,

1980, in which it found that Trailer Train and Delpro are carriers within the meaning of the Act because both are owned and controlled by rail carriers, and both "exist solely to facilitate rail transportation by supplying or maintaining equipment to be used by rail carriers, which equipment historically has been owned and maintained by rail carriers." The National Mediation Board therefore concluded that it had jurisdiction over Delpro and directed that a Board Representative be assigned to complete the investigation of the alleged representation dispute. Delpro immediately informed the NMB of its intention to seek reconsideration of the Board's jurisdictional decision and requested either a formal hearing or an opportunity to submit evidence and legal arguments on the question of the Board's jurisdiction over Delpro. On October 2, 1980, the NMB granted Delpro until October 8, 1980, "to make a prima facie showing," through written submissions, that the Board's determination of jurisdiction over Delpro was erroneous, and reserved decision on whether a hearing would be necessary. On October 8 Delpro filed a

---

1. Section 2, Ninth, of the Railway Labor Act, as amended, 45 U.S.C. § 152, Ninth, provides in pertinent part:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of

any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.

2. Section 1, First, of the Act, 45 U.S.C. § 151, provides, *inter alia*:

> The term "carrier" includes any express company, sleepingcar company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad. . . .

formal Petition for Reconsideration, with supporting affidavits and exhibits, in which it argued that neither Delpro nor Trailer Train was a carrier within the meaning of the Railway Labor Act, and requested the Board to either overrule its earlier determination of jurisdiction over Delpro or to order a formal hearing on the matter. On October 15, 1980, the Board denied Delpro's Petition for Reconsideration, concluding that the evidence submitted by Delpro did not support Delpro's contention that it was not a carrier, and denied Delpro's request for a hearing.

This action was commenced on October 23, 1980, when Delpro filed a complaint against the National Mediation Board, in essence alleging that the Board had exceeded its statutory jurisdiction, and seeking a declaratory judgment that Delpro is not a carrier within the meaning of the Railway Labor Act and preliminary and permanent injunctive relief that would restrain the NMB from conducting any further proceedings in connection with the alleged representation dispute at Delpro. Delpro filed with its complaint a motion for preliminary injunction to restrain any further proceedings by the NMB. The Board, on November 17, 1980, moved to dismiss the action for want of subject matter jurisdiction, arguing that the claims raised by Delpro were not ripe for judicial review.

Hearing on Delpro's motion for a preliminary injunction and on the Board's motion to dismiss was held on December 8, 1980. At argument Delpro took the position that the Board lacked jurisdiction over it, and that if the investigation and certification proceedings continued Delpro would suffer irreparable harm.[3] Delpro thus sought an injunction that would promptly halt all proceedings by the Board, and thus foreclose the possibility that the Board would certify a labor representative for Delpro's employees. The Board opposed Delpro's motion for a preliminary injunction, arguing that the Court lacked subject matter jurisdiction to review a National Mediation Board determination of jurisdiction while the Board was still carrying out its administrative responsibilities of investigating the alleged representation dispute, holding an election and certifying a representative if warranted. Thus the relief sought by both Delpro and the Board hinged upon the pendency of NMB proceedings: Delpro, because the alleged irreparable harm being suffered was attributed to the continuing NMB certification proceedings, and the NMB because its argument was that the controversy was not ripe for adjudication prior to the time it had certified a representative. At the December 8, 1980, hearing, the parties informed the Court that the certification process was nearing completion and that the NMB might certify a representative as early as December 15, 1980. In fact, on December 17, 1980, the NMB certified the Railway Carmen as representative of the class of carmen, helpers and apprentices at Delpro. Since the Court had not yet ruled on Delpro's motion for a preliminary injunction or the Board's motion to dismiss, the procedural posture of the controversy was substantially altered with the Board's issuance of its certification of the Railway Carmen.[4]

The change in circumstances prompted Delpro to file, on December 29, 1980, a supplemental complaint and a "Motion for Stay of Certification." Delpro alleged in its complaint that it will suffer irreparable injury unless the certification is stayed, including possible civil and criminal fines and penalties should it refuse to bargain with

---

3. Delpro alleged that it would suffer a variety of forms of irreparable injury were the Board permitted to continue its investigation, including: (1) the cost and burden of participating in unlawful board proceedings; (2) potential disruption of its work place during a representation election, and (3) possible criminal fines and penalties should it refuse to participate in certification proceedings.

4. The Court was able to hear argument on Delpro's motion for preliminary injunction only the week before certification of the Railway Carmen because of several postponements requested by the parties. Hearing on the motion was originally scheduled for November 13, 1980, and was then rescheduled for November 25, 1980, at the request of the NMB. Then, at the request of Delpro, argument was postponed until December 8, 1980.

the Railway Carmen, inevitable disruption of Delpro's workforce should Delpro refuse to bargain with the union, including potential strikes and picketing, and economic loss as a result of the labor disputes. Delpro expressly seeks a stay of certification in lieu of its earlier requested preliminary injunction. The Board responded on January 5, 1981, by filing a supplemental motion to dismiss on two grounds: (1) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the NMB's determination of jurisdiction was not "a patently gross violation of a statutory prohibition" and the Court therefore lacks subject matter jurisdiction of the controversy; and (2) pursuant to Rule 12(b)(6) because the NMB's determination of jurisdiction was correct as a matter of law, and Delpro's complaint, as supplemented, therefore fails to state a claim upon which relief can be granted.

I

I will first address the NMB's contention that this Court lacks subject matter jurisdiction to review its determination of jurisdiction over Delpro.

It is well established that the federal courts have very limited jurisdiction to review actions of the National Mediation Board. In the leading case of *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), the Supreme Court laid down the rule that factual determinations made during the course of certification proceedings, and which have been expressly delegated by statute to the Board, are not subject to judicial review. Thus, when the Board determined that all yardmen employed in the New York Central rail system should participate in a single representation election, and then certified the victorious union as representative of all yardmen, the district court lacked jurisdiction to hear a claim by a rival union

that the Board should have divided the yardmen into separate crafts or classes and then permitted each group of yardmen to elect separate representatives. The court held that the Board's action was unreviewable because the Railway Labor Act expressly gave the Board the power to determine the appropriate craft or class in which an election should be held, and because to permit review would, contrary to Congress's intent, impede and drag out the established procedures for expeditiously certifying a representative. *See* 320 U.S. at 300–01, 305, 64 S.Ct. at 99. More recently, in *Brotherhood of Railway and Steamship Clerks v. Association for the Benefit of Non-Contract Employees,*[5] the Court held that the NMB's designation of the appropriate craft or class to participate in a representation election is not subject to judicial review provided that the Board, prior to defining the group of employees eligible to participate in the election, has conducted the statutorily required investigation. *See* 380 U.S. at 668, 85 S.Ct. at 1201. In addition, the Court held that the Board's selection of a ballot for use in a representation election is a necessary incident of its duty to resolve representation disputes, and that such a decision is not subject to judicial review absent a showing that the Board "acted in excess of its statutory authority." 380 U.S. at 669, 85 S.Ct. at 1202. It is thus clear that Congress has vested the NMB with the power to resolve a broad range of procedural and factual questions so that its duty to expeditiously ascertain and certify the employees' duly designated and authorized representatives will not be impeded by "the haggling and delays of litigation...." *Id.* at 671, 85 S.Ct. at 1203.[6]

The extent to which the restrictions on judicial review of NMB action extend to actions challenging the jurisdiction of the Board is unclear. There is agreement among the courts that the district courts do

**5.** 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

**6.** The courts are, however, free to review action by the Board "in excess of its delegated powers and contrary to a specific prohibition in the

Act." *Leedon v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958); *see Railway Clerks, supra*, 380 U.S. at 659–60, 85 S.Ct. at 1197–98.

not have jurisdiction to consider an employer's pre-certification claim that an NMB investigation and certification proceeding should be enjoined because the employer is not a "carrier" within the meaning of the Railway Labor Act.[7] The courts have taken the view that such controversies are simply not ripe for adjudication because the administrative process remains incomplete until the Board has conducted an election and certified a representative. *See United States v. Barr*, 81 L.R.R.M. 2219, 2220 (4th Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *United States v. Feaster*, 410 F.2d 1354, 1364 (5th Cir.), *cert. denied*, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969); *American Air Export & Import Co. v. O'Neill*, 221 F.2d 829, 830 (D.C.Cir.1954). In *Feaster* the Fourth Circuit concluded that the NMB's determination of jurisdiction was not subject to immediate judicial review because it was not a final agency order or action. In so ruling the court relied on the Supreme Court's statement that the NMB's "ultimate finding of fact prerequisite to enforcement by the courts" is the certificate issued after a representation election. *See Virginian Railway Co. v. System Federation*, 300 U.S. 515, 562, 57 S.Ct. 592, 606, 81 L.Ed. 789 (1937). Having concluded that the NMB's jurisdiction was not then subject to review, the Court of Appeals in *Feaster* noted "that it is possible, but far from certain, that the National Mediation Board's determination that the Docks Department is a 'carrier' may *eventually* be a proper subject for judicial review." 410 F.2d at 1364. Similarly, the District of Columbia Circuit ruled that an immediate challenge by an alleged "carrier" to an NMB determination of jurisdiction was not ripe for judicial review because "the administrative process, far from having been completed, is only just begun...." *O'Neill, supra*, 221 F.2d at 830.

Although the caselaw limits judicial power to review NMB determinations, no case has gone so far as to hold that a carrier may not challenge the Board's jurisdiction in post-certification proceedings. In *United States v. Barr, supra*, a case relied upon by the Board, although the Court denied immediate review of an NMB determination of jurisdiction, it stated "[t]here will be time enough to determine the question of whether the Ports Authority is a 'carrier' ... after administrative remedies have been exhausted." 81 L.R.R.M. at 2220. Indeed, in the only case to directly address the question, the Fourth Circuit held that the question whether a particular employer is a "carrier" subject to the jurisdiction of the NMB is justiciable in post-certification proceedings. *See International Longshoremen's Association v. North Carolina Ports Authority*, 463 F.2d 1, 3 (4th Cir. 1972). In that case the longshoremen's union, after having been certified by the NMB, sought an injunction to require the employer to negotiate over rates of pay and working conditions. The Ports Authority defended on the ground that it was not a carrier under the Railway Labor Act and that the NMB therefore lacked jurisdiction over the controversy. The Court held that the NMB's finding that the Ports Authority was a carrier was subject to judicial review because it was an issue of the Board's jurisdictional power. *See* 463 F.2d at 3. The Court distinguished *Switchmen's Union, supra*, on the ground that the issue in that case was not the Board's jurisdiction, but of judicial power to review "a Board ruling on a substantial subject clearly within its authorized field." *Id.* Thus the Court seemed to find a crucial distinction between judicial review of questions of fact and of procedure necessarily incident to the Board's functions of investigating disputes, holding elections and issuing certificates, and judicial review of questions of law involving the Board's statutory power to act.

The Court took notice in the *North Carolina Ports Authority* case of the general

---

**7.** Thus Delpro's claim that this Court had jurisdiction to entertain its challenge to the NMB's jurisdiction while the NMB was conducting its precertification investigation is without merit.

This Court's jurisdiction, if any, exists because the NMB, subsequent to the filing of this lawsuit, certified the Railway Carmen as the representative of Delpro's employees.

presumption in favor of judicial review of administrative action. *Id.* at 3. This presumption is embodied in the Administrative Procedure Act which provides for judicial review to anyone "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," so long as no statute precludes judicial review and the action in question is not committed by law to agency discretion. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *A. O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 521 (3d Cir. 1976); 5 U.S.C. §§ 701(a), 702. The argument in favor of judicial review is especially compelling when the complaint does not attack as erroneous a factual determination expressly delegated to the Board, but rather alleges that the Board had no statutory authority to act in the first instance. As Judge Leventhal noted, "The judicial branch has the function of requiring the executive (or administrative) branch to stay within the limits prescribed by the legislative branch." *National Automatic Laundry and Cleaning Council v. Schultz,* 443 F.2d 689, 695 (D.C.Cir.1971).

■ I must conclude that there is no bar to post-certification judicial review of a determination by the National Mediation Board that an employer is a "carrier" and therefore subject to its jurisdiction. Once the Board has issued a certificate it has completed its role in resolving a representation dispute and has issued what is the equivalent of a final order which requires the employer to negotiate with the certified union. At that point judicial review no longer impinges upon the interest in avoiding interference with ongoing administrative proceedings identified in *Feaster, O'Neill* and *Barr.* Post-certification review of the Board's jurisdiction simply does not impede the policy of orderly and expeditious resolution of representation disputes; with the certificate issued, the employer is under a legal obligation to negotiate with the certified union unless and until it obtains a judgment that the Board acted unlawfully. Neither *Switchmen's Union, supra,* nor *Railway Clerks, supra,* controls the question of post-certification review of NMB jurisdiction. These cases simply hold that factual and procedural determinations that are necessary incidents of the Board's duty to resolve representation disputes are ordinarily not subject to judicial review. Resolution of such questions as the appropriate craft or class in which to hold an election, or the form of ballot to be used, benefit from the application of the NMB's expertise and experience and must be resolved quickly, without the disruptive effects of protracted litigation. It goes too far, however, to suggest that the Board can define the scope of its own jurisdiction, free from judicial review.

■ The Board's reliance on *Leedom v. Kyne, supra,* for the proposition that this Court may not review the Board's determination of jurisdiction because Delpro does not allege a "patently gross violation of a statutory prohibition" is misplaced. *Kyne* involved a challenge to a determination by the National Labor Relations Board of the unit of employees appropriate for collective bargaining purposes, an action, much like the NMB's determination of the appropriate craft or class, which is ordinarily not subject to judicial review. The Supreme Court held that because the statute in question affirmatively gave professional employees the right not to be included in the same bargaining unit as nonprofessional employees, judicial review was necessary to vindicate this congressionally created right. *See* 358 U.S. at 190–91, 79 S.Ct. at 184–85. The *Kyne* exception applies only in unusual circumstances, and does not "permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." *Boire v. Greyhound Corp.,* 376 U.S. 473, 481, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964). It is critical, however, to analyze the nature of the agency action presented for review. The limitation on review established in *Switchmen's Union* and reaffirmed in *Leedom v. Kyne* and *Railway Clerks* applies only to factual and procedural determinations expressly or im-

pliedly delegated to the NMB as necessary to its duty to resolve representation disputes, and which, if subject to judicial review either during the course of or after the completion of the administrative proceedings, would tend to delay certification of a representative. Thus, a craft or class determination is ordinarily not reviewable: if subject to immediate judicial review, the representation election would be delayed; if subject to post-certification review, a new election will be required if the appeal is successful. Post-certification review of the NMB's jurisdiction is qualitatively different. If the Court determines the NMB had jurisdiction, then the certificate issued by the NMB remains in force; if the Court determines the NMB lacked jurisdiction, the certificate and all other orders become void and of no effect. In normal circumstances, however, post-certification judicial review will neither delay administrative proceedings, nor require further administrative proceedings. The issue decided by the Court is simply whether the Board acted within its congressionally delegated power when it asserted jurisdiction over a particular controversy. The only chance of delay is in the commencement of negotiations between the certified union and the carrier, and that should not occur unless the carrier can show sufficient likelihood of success on the merits and potential for irreparable injury to warrant the entry of a preliminary injunction in its favor freeing it of the duty to negotiate.

## II

Although I reject the Board's argument that the question of its jurisdiction is insu-

lated from post-certification review, it does not automatically follow that the issue is now properly before the Court. The NMB has, with the issuance of the certificate to the Railway Carmen, fulfilled its statutory duty in connection with the resolution of the representation dispute at Delpro. Although the Railway Carmen's certificate imposes a legal obligation upon Delpro to negotiate ("treat") with the Railway Carmen as the representative of Delpro's employees, the statute confers upon the NMB no enforcement powers.[8] Rather, the Railway Labor Act imposes a duty upon the representatives of the employer and employees to reach labor agreements and to resolve disputes by negotiation. If an employer refuses to negotiate with a union properly certified as the representative of its employees, the remedy is an action by the union for an injunction to compel the employer to negotiate. *See Virginian Railway Co. v. System Federation*, 300 U.S. 515, 549–53, 57 S.Ct. 592, 600–02, 81 L.Ed. 789 (1937). Once the NMB has certified a representative it has no further role to play unless called upon by the parties to a labor dispute to provide its mediation or arbitration services. Therefore, when an employer challenges the NMB's jurisdiction in a post-certification proceeding, the real controversy is between the employer and the certified representative; the issue is whether the employees' representative can compel the employer to negotiate.[9]

■ The absence of the Railway Carmen from this dispute [10] compels me to consider

---

8. Delpro argues that it will be subject to criminal penalties should it refuse to bargain with the Railway Carmen. However, the provision of the Railway Labor Act requiring a carrier to "treat" with its employees' certified representative, 45 U.S.C. § 152 Ninth, is not subject to the criminal penalties provision of the Act. *See* 45 U.S.C. § 152 Tenth.

9. In the one case in which an employer was permitted to litigate its claim that the NMB lacked jurisdiction over it, it was as a defense to a union's action for an injunction to compel the employer to negotiate. *See International*

*Longshoremen's Association v. North Carolina Ports Authority*, 463 F.2d 1 (4th Cir. 1972).

10. It should be noted that the Railway Carmen sought to intervene in the early stages of the litigation, prior to its certification as the bargaining representative of Delpro's employees. Delpro strongly opposed the Railway Carmen's motion to intervene, while the NMB took no position on the matter. The Court denied the motion to intervene on November 25, 1980. The primary reasons for denying the motion were the Court's conclusions that in the pre-certification context a particular union has no interest in the question of the National Media-

whether this is an appropriate case for the Court to exercise its discretion to determine Delpro's right to declaratory relief.[11] In exercising its reasoned discretion, the two most important criteria to be weighed by the Court are whether declaratory relief would clarify and settle the legal relations in issue, and whether it would afford relief from the uncertainty and controversy giving rise to the controversy. *See Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 709 (3d Cir. 1940); *Stamicarbon, N.V. v. Chemical Construction Corp.*, 355 F.Supp. 228, 231–32 (D.Del.1973); E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941). Other relevant considerations include the convenience of the parties, the public interest in resolution of the uncertainty, and the availability and relative convenience of other remedies. *See Bituminous Coal Operators' Association, Inc. v. United Mine Workers*, 585 F.2d 586, 596–97 (3d Cir. 1978).

The obvious problem with resolving the issue of Delpro's right to declaratory relief in this action is that it would not finally resolve the question of whether Delpro is a carrier under the Railway Labor Act. Since the Railway Carmen is not a party to this action, it would not be bound by a judgment of this Court declaring that Delpro is not a carrier. The Railway Carmen would therefore be free to bring an action for an injunction to compel Delpro to negotiate with it. Moreover, since the NMB has no power to compel Delpro to negotiate

with the Railway Carmen, a declaratory judgment against the NMB would be of practical significance only if the NMB were called upon to furnish its mediation or arbitration services in some future labor dispute at Delpro. The core of the present controversy, however, is whether Delpro must negotiate with the Railway Carmen; without the Railway Carmen in this lawsuit the dispute over whether Delpro is a carrier subject to the jurisdiction of the NMB will not be finally resolved.

A court may in its discretion decline to grant declaratory relief because of the non-joinder of an interested party, regardless of whether the absent party is indispensable within the meaning of Rule 19(b) of the Federal Rules of Civil Procedure.[12] *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967) (dictum); *Delno v. Market Street Railway Co.*, 124 F.2d 965, 968–69 (9th Cir. 1942); 6A Moore's Federal Practice ¶ 57.08[2] (2d ed. 1979). In *Delno* a bondholder sued the issuer of the bonds for a judgment declaring his rights to be superior to those of other bondholders. The court of appeals held that the district court properly dismissed the declaratory judgment action because a judgment would not finally settle the priority question since the absent bondholders would have the right to litigate the question in a separate action. 124 F.2d at 968–69. Likewise in this case, no useful purpose would be served by per-

---

tion Board's jurisdiction over an employer, and that, even assuming the union had an interest in the question, its interest was adequately protected by the NMB. *See* Doc. No. 22.

11. Delpro's complaint makes clear that the ultimate relief sought is a declaratory judgment that it is not a carrier subject to the jurisdiction of the Railway Labor Act. *See* Complaint (Doc. No. 1) 16 ("the sole issue before the Court involves a *de novo* determination of jurisdiction over Delpro under the Railway Labor Act...."). Although Delpro complains about the procedures followed by the Board, Delpro does not seek an order requiring the Board to reconsider its determination of jurisdiction.

12. The factors enumerated in Rule 19(b) to be considered by a court in determining whether

an absent person is an indispensable party, thus requiring dismissal of the action are:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Since the Railway Carmen may protect its rights in a separate action against Delpro for injunctive relief, and because Delpro could raise its claims as a defense in such a case, the Railway Carmen is probably not an indispensable party.

mitting Delpro to litigate the question of whether it is a carrier because the Railway Carmen, the party with whom Delpro has the most immediate and concrete controversy, would not be bound by an adverse judgment.

Other considerations also weigh in favor of dismissal of the action. An altogether effective remedy remains available to Delpro. As noted above, the means of enforcing an employer's duty to negotiate with its employees' representative is an injunctive action by the certified union. In that situation, as in the *North Carolina Ports Authority* case, supra, Delpro could raise the alleged lack of NMB jurisdiction as a defense. Moreover, since the NMB has no power to compel an employer to abide by its statutory duty to negotiate, a judgment in an action between Delpro and the Railway Carmen would finally resolve the question. I realize that dismissal of the action at this point may cause the parties additional expense and require further resort to the courts, but further proceedings are necessary if the dispute is to be resolved with certainty. Finally, although there is a substantial public interest in the prompt resolution of labor disputes in the railroad industry, that interest would not be significantly furthered by reaching the merits of the controversy of this case as it is now before the Court. The public interest would, however, be done a disservice if the Court were to permit this case to go forward, only to have the issues presented relitigated in another forum.

I conclude that the exercise of reasoned discretion requires me to dismiss this action.

### Conclusion

An order will be entered dismissing this action. In view of this disposition of the case, it is unnecessary to reach Delpro's claim for interlocutory equitable relief.