**DELPRO COMPANY, Plaintiff,**

v.

**BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, et al., Defendants.**

**Civ. A. Nos. 81–103, 81–106.**

United States District Court,
D. Delaware.

Aug. 7, 1981.

---

Richard G. Elliott, Jr. and William J. Wade, Richards, Layton & Finger, Wilmington, Del., for Delpro Co.; Ray J. Schoonohoven, Valerie J. Hoffman, and Douglas A. Darch, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel.

Joseph J. Farnan, Jr., U. S. Atty. and Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., Sandra M. Schraibman, and Daniel J. Metcalfe, Dept. of Justice, Washington, D. C., for National Mediation Bd.; Thomas S. Martin, Acting Asst. Atty. Gen. and Ronald M. Etters, Gen. Counsel, National Mediation Board, Washington, D. C., of counsel.

Sheldon Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for Brotherhood Ry. Carmen of U. S. and Canada, et al.; Edward J. Hickey, Jr., Thomas A. Woodley, Michael S. Wolly, and Richard J. Hirn, Mulholland & Hickey, Washington, D. C., of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This case is a consolidation of two separate actions—one brought by Delpro Company ("Delpro") against the Brotherhood Railway Carmen of the United States and Canada ("Brotherhood Railway Carmen" or "BRC") and the National Mediation Board of the United States ("NMB" or "Board"), and another brought by the Brotherhood Railway Carmen against Delpro. Since both actions presented questions regarding Delpro's status as a "carrier" under the Railway Labor Act (the "Act"), they were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Delpro is seeking a declaratory judgment that it is not a "carrier" under the Act, as well as injunctive relief, while the Brotherhood Railway Carmen seeks preliminary and permanent injunctive relief that would compel Delpro to recognize it as the representative of certain Delpro employees and to "treat," or bargain, with it as required by the Railway Labor Act.[1] Now before the Court are motions for summary judgment filed by the NMB and the Brotherhood Railway Carmen in the action brought by Delpro, and a motion for a preliminary injunction originally sought by the Brotherhood Railway Carmen in the action it filed. In addition, Delpro has filed with its brief in opposition to the summary judgment motions of the NMB and the BRC its own cross-motion for summary judgment.

### Procedural History

The Brotherhood Railway Carmen, on August 20, 1980, filed with the National Mediation Board an application pursuant to Section 2, Ninth, of the Railway Labor Act[2] requesting the Board to investigate an alleged representation dispute among Delpro's employees. The Board's investigation included an inquiry into whether Delpro is a "carrier" within the meaning of the Act.[3] During the course of the investigation Delpro made written submissions to the NMB in support of its position that the NMB

---

1. The BRC and Jack Weatherlow, a former Delpro employee, also raise the claim that Weatherlow was discharged by Delpro in violation of the Railway Act. The discriminatory discharge claim is not within the scope of the motions before the Court.

2. Section 2, Ninth, of the Railway Labor Act, as amended, 45 U.S.C. § 152, Ninth, provides:

   If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.

3. Section 1, First, of the Act, 45 U.S.C. § 151, First, provides, *inter alia*:

   The term "carrier" includes any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad. . . .

lacked jurisdiction over it because it is not a "carrier." The NMB on October 1, 1980, issued a Determination of Jurisdiction in which it found that both Delpro and its parent corporation, Trailer Train Company ("Trailer Train"), are carriers within the meaning of the Railway Labor Act. The Board assumed jurisdiction over Delpro and directed that a Board representative be assigned to complete the investigation of the alleged representation dispute. Delpro immediately notified the NMB that it intended to seek reconsideration of the Board's determination of jurisdiction and requested either a formal hearing or the opportunity to submit evidence and legal authorities on the issue. On October 8, 1980, by leave of the Board, Delpro filed a formal Petition for Reconsideration, with supporting affidavits and exhibits, in which it requested the NMB to overrule its determination of jurisdiction or to order a formal hearing on the matter. The Board denied Delpro's petition on October 15, 1980, concluding that the materials submitted by Delpro did not support its contention that it is not a carrier.

On October 23, 1980, Delpro commenced an action in this Court against the National Mediation Board, alleging that the Board had exceeded its statutory jurisdiction, and seeking a declaratory judgment that it is not a carrier, as well as related injunctive relief. On December 17, 1980, while that action was pending, the NMB certified the Brotherhood Railway Carmen as representative of the class of carmen, helpers and apprentices at Delpro. This Court, on March 6, 1981, issued an opinion and order which, although rejecting the Board's argument that the Court lacked jurisdiction to review the NMB's determination of jurisdiction, dismissed the action on the ground that the absence of the Brotherhood Railway Carmen from the action would have precluded the Court from entering a judgment that would finally resolve the question of Delpro's status as a carrier. *See Delpro Company v. National Mediation Board*, 509 F.Supp. 468 (D.Del.1981).

The present litigation began on March 11, 1981, when Delpro filed its complaint seeking declaratory and injunctive relief against the NMB and the Brotherhood Railway Carmen. The BRC filed its action on March 12, 1981. Thereafter the NMB and the BRC moved for summary judgment against Delpro, and the BRC sought a preliminary injunction. The two actions were consolidated by an order of the Court filed on July 13, 1981. The Board and the BRC contend that they are entitled to summary judgment because undisputed facts developed in the administrative process establish Delpro's status as a carrier under the plain meaning of the Railway Labor Act. The BRC seeks by way of preliminary injunction to compel Delpro to commence labor negotiations and to provide the BRC with information needed for purposes of collective bargaining. Consideration of these motions has been delayed because of discovery disputes and other procedural skirmishes.

*Standard of Review*

Before addressing the merits of the questions raised, it is appropriate to first set out the appropriate standard for review of NMB jurisdictional decisions. In a prior related action this Court, although recognizing that federal courts have very limited power to review actions of the National Mediation Board, concluded that a court may consider an employer's contention that the Board had no power to act at all because the employer was not a "carrier" within the Board's statutory jurisdiction. *Delpro Co. v. National Mediation Board*, 509 F.Supp. 468, 472–75 (D.Del.1981). The Court's power to review the Board's conclusion that Delpro is a carrier under the Act is not, however, unlimited.

■ The starting point in determining the appropriate standard of review is a careful analysis of just what is being reviewed. A Board determination of carrier status requires both findings of fact and conclusions of law. First, the Board must make factual findings on such issues as the nature and organizational structure of an employer's business and the type of work its employees do. Second, the Board must make conclusions of law in determining whether a company's business organization

and activities qualify it as a "carrier" under section 1, First, of the Railway Labor Act. The Court considered the proper scope of judicial review in the context of a discovery dispute earlier in this litigation.[4] There the Court determined that the Board's factual findings should be reviewed under the "arbitrary and capricious" test set out in section 706(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).[5] In applying this test the Court must determine whether the agency "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The focal point for this review is the administrative record, which must be examined to determine whether it supports the agency's findings. *Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). In the context of this case, the Court must determine if the Board looked to the relevant factors for imposing carrier status and whether its findings of fact in this regard are supported by the record. To the extent that a determination of the relevant factors is based upon a construction of the applicable provisions of the Railway Labor Act the Court may apply its own interpretation of that statute.[6] It is well established, however, that the construction of a statute by the administrative body charged with its administration or execution is entitled to considerable deference. *See, e. g., FCC v. WNCN Listeners Guild*, —— U.S. ——, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In view of the National Mediation Board's experience in administer-ing and applying the Railway Labor Act and its knowledge of the railroad industry, that deference is no less applicable in this case.

*Statutory Definition of "Carrier"*

The Railway Labor Act defines a "carrier" as

> any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad . . . .

45 U.S.C. § 151, First.

The parties agree that Delpro is a carrier under this statute only if it satisfies a two part test, consisting of the "ownership or control" requirement and the "function" requirement. First, Delpro must be (a) owned by, (b) controlled by, or (c) under common control with, a carrier by railroad. Second, Delpro must (a) operate equipment or facilities, or (b) perform any service, in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property by railroad.

In applying the first, or "ownership or control," aspect of this test, the Board focused on Delpro's corporate relation to Trailer Train, its parent, and to Trailer Train's stockholders. In applying the second, or "functional" aspect of the test, the Board focused on Delpro's provision of services which facilitate transportation of

4. *See Delpro Co. v. Brotherhood Railway Carmen of the United States and Canada, Consol.*, C.A. No. 81–103, slip op. at 2–4 (D.Del. July 13, 1981).

5. § 706(2)(A) authorizes the Court to set aside agency findings and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

6. 5 U.S.C. § 706 provides in pertinent part that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."

property by rail. For the reasons explained below the Court finds that these were the relevant factors to consider in the context of this case and that the Board's findings regarding material facts are supported by the record. The National Mediation Board and the Brotherhood Railway Carmen are therefore entitled to the entry of summary judgment in their favor.

*Ownership or Control*

█ Uncontroverted evidence in the administrative record established the following facts, which are in material respects not disputed by Delpro. Delpro is a wholly owned subsidiary of the Trailer Train Company.[7] Trailer Train owns the largest private fleet of railroad flatcars in the United States which it leases on a pooled basis to American railroads.[8] The stock of Trailer Train is owned by twenty-nine operating railroads, the trustees of two former operating railroads and one freight forwarding company. Nearly all of the directors of Trailer Train are senior officers of the railroads holding interests in Trailer Train.[9] Only Trailer Train stockholders are eligible to participate in its flatcar pool. Railbox, a Trailer Train subsidiary, operates a pool of railroad boxcars that is not restricted to Trailer Train stockholders.[10] At least as of May 1980, car hire charges for Trailer Train and Railbox were set "at levels sufficient to meet the ordinary and necessary expenses of Trailer Train and Railbox, to establish for Trailer Train and Railbox financial positions enabling them to finance necessary car acquisitions on reasonable terms, and to keep the respective pools in the proper condition for operation at the highest point of efficiency."[11] Trailer Train's car contracts with railroads make Trailer Train responsible for maintenance of the leased equipment. Major maintenance work on equipment leased by Trailer Train is performed in substantial part by four wholly owned maintenance subsidiaries. Delpro is one of these subsidiaries, and Delpro's business operations are limited to repair of railroad cars owned by Trailer Train.

The Court is satisfied that the NMB was justified in concluding, based upon the above undisputed facts, that Delpro is "directly or indirectly owned ... by ... any carrier by railroad...." The stock of Trailer Train is held almost entirely by railroad companies that indisputably qualify as "carriers."[12] Delpro, as a wholly owned subsidiary, is therefore indirectly owned by a group of carriers by railroad. It is unimportant that Delpro is owned by a group of carriers, rather than by a single rail carrier.

---

7. Except where otherwise noted, all facts in this paragraph are taken from the Trailer Train Prospectus of May 13, 1980, submitted by Delpro to the National Mediation Board as an exhibit to its Petition for Reconsideration. This is included in the administrative record. *See* Doc. No. 29A.

8. Trailer Train was incorporated by two railroads in 1955. Its origin is explained in the Trailer Train Prospectus:

The concept of a nationwide fleet of flatcars originated when railroads sought to combine the cost advantages of long haul rail transportation with the origin and terminal flexibility of trucking. The plan required a large number of cars, readily interchangeable among railroads and capable of transporting highway trailers in high mileage service under widely varying operating conditions. Efficient implementation of the plan required standardized design, heavy duty construction and volume purchasing. Trailer Train was organized to acquire, finance and maintain a fleet of such cars.

*See* Doc. No. 29A (Exhibit C to Delpro's Petition for Reconsideration).

9. *See* Exhibits 1 & 3 to the Verified Statement of C. D. Buford, President of Trailer Train, before the Interstate Commerce Commission, dated October 19, 1979 (lists of stockholders and directors of Trailer Train as of that date).

10. According to the Trailer Train May 1980 Prospectus, Railgon, another subsidiary, was scheduled to commence operations with a pool of gondola cars in late 1980 or 1981. That pool also would not be restricted to Trailer Train stockholders.

11. *See* Trailer Train May 1980 Prospectus at 16.

12. Delpro itself urged in its complaint that the ownership interests of shareholders other than carriers by rail are insignificant ("TTX is not owned and controlled by any one rail carrier but rather its stockholders are, with a couple minor exceptions, some 29 competing rail carriers...). Complaint (Doc. No. 1) at 5.

1 U.S.C. § 1, which provides rules of construction for federal statutes, expressly provides that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise—words imparting the singular include and apply to several persons, parties or things. . . ." There is no evidence that Congress intended to limit the term carrier to the singular in this context. Therefore, because such a literal reading of the statute would not further the Railway Labor Act's purpose of avoiding disruptions of interstate commerce as a result of labor disputes in the rail industry,[13] the Court concludes that "carrier" should not be limited to the singular.

It is also evident that Delpro satisfies the alternative test of being controlled by a group of carriers by railroad. Uncontroverted evidence showed that nearly all of Trailer Train's directors are senior officers of railroad shareholders. The fact that these railroads own nearly all of the stock of Trailer Train, and are represented on Trailer Train's Board by their officers, establishes beyond question that these carriers "control" Trailer Train and its subsidiaries, including Delpro. Concededly, no one rail carrier could control Trailer Train or Delpro in the sense of manipulating those companies to further its interests at the expense of other shareholders. It is enough, in my view, that the shareholding rail carriers may jointly control Trailer Train and Delpro to further their mutual interests. Nor does the Court find any basis for concluding that the only type of "control" contemplated by the statute is direct supervision by a railroad of another company's day-to-day business operations or employment policies.[14] In this case the stockholding railroads control Delpro because, through their representatives on Trailer Train's Board of Directors, they are able to determine the corporate policies of Delpro.

*The Function Test*

Likewise, the Court is satisfied that the repair of railroad cars, a function essential to the operation of any railroad, constitutes the performance of a service in connection with the transportation of property by railroad. As has been aptly stated by another court construing a nearly identical statute, "[i]t is difficult to conceive of any supporting activity that is more inherent or vital to the sustained functioning of a railroad system than the repair and construction of its rolling stock." *Despatch Shops, Inc. v. Railroad Retirement Board*, 153 F.2d 644, 646 (D.C.Cir.1946). If a railroad did not participate in the type of cooperative arrangement provided by Trailer Train, it would have to otherwise obtain and provide for the repair of its own fleet of railroad

---

13. *See* 45 U.S.C. § 151a.

14. There are a number of recent NMB cases which have applied a "control" test which looked at the degree to which a carrier influenced a contractor's day-to-day operations. *See, e.g.,* Ground Services, Inc. (San Diego), 7 N.M.B. No. 266 (1980); Missouri-Illinois Central Industries, Ltd., 7 N.M.B. No. 256 (1980); Boeing Airport Equipment, Inc., 7 N.M.B. No. 193 (1980). However, in none of these cases did the carrier have any ownership interest in the contracting company. Thus a different type of analysis was appropriate to determine whether a carrier controlled employees of a contractor who performed services traditionally performed by employees of carriers. In this case, the stockholding railroads control Delpro through their interlocking corporate relationships.

To the extent that Great Lakes Airlines, Inc., 4 N.M.B. 5 (1961), might support Delpro's position that a subsidiary of a carrier which performs repair work for its parent is not itself a carrier, the Court perceives no unfairness to Delpro in the NMB's decision to overrule that decision. The interpretation given the statute by the Board comports with its plain meaning. Moreover, administrative agencies, like courts, must be free to reconsider prior decisions in light of changing circumstances and developments in the law. In denying Delpro's Petition for Reconsideration the Board stated that it has been reexamining its jurisdictional standards "in light of changing corporate relationships and increasing use of contractors to perform work integral to rail and air transportation." A glance at the list of the carrier-shareholder participants in the Trailer Train pool makes plain that many of the nation's major rail carriers have elected to obtain a significant amount of their rail car needs from the Trailer Train pool in lieu of owning and maintaining their own cars. In these circumstances, the Court finds nothing unprincipled about the Board's decision.

cars. Indeed, the National Mediation Board indicated in its determination of jurisdiction that rail carriers historically owned and maintained their own cars. No one contends that workers engaged in the repair of railroad cars would not be covered by the Railway Labor Act if employed directly by a rail carrier. The statute does not require that these workers be excluded from such coverage simply because they are employed by a corporation formed as a joint venture by a group of rail carriers.

### Conclusion

In sum, the Court concludes that the National Mediation Board considered the relevant factors in assessing Delpro's status as a carrier and that its material factual findings are fully supported by the administrative record. The Board properly concluded that Delpro's business activities and its corporate ties to a large group of rail carriers qualified it as a "carrier" within the plain meaning of the Railway Labor Act.[15]

Because Delpro is a carrier, the Brotherhood Railway Carmen is entitled to an injunction compelling Delpro to "treat with" it. *Virginian Railway Co. v. System Federation*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The Brotherhood Railway Carmen has, however, moved only for preliminary injunctive relief, and not the permanent injunction authorized by the Railway Labor Act. Rather than enter preliminary relief at this stage, the Court will await the filing by the Brotherhood Railway Carmen of an appropriate pleading and proposed form of permanent injunction, on notice, at which time it will enter a statutory injunction pursuant to the Railway Labor Act.

15. The Court has considered all other arguments raised by Delpro and has found them to be without merit. In particular, the Court finds unavailing Delpro's argument that the Interstate Commerce Commission's prior determination that Trailer Train is not a common carrier under the Interstate Commerce Act, 49 U.S.C. § 1, is dispositive of Delpro's status as a carrier under the Railway Labor Act. On its face, the Railway Labor Act plainly extends both to companies that qualify as carriers under the Interstate Commerce Act, and those that fall within the specific standards laid out in 45 U.S.C. § 151, First.