DELPRO COMPANY

v.

BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, AFL–CIO; Local Lodge of Brotherhood Railway Carmen of the United States and Canada, AFL–CIO; and National Mediation Board of the United States of America.

John TAYLOR, individually and as representative of Delpro Company, Dan Lentz, individually and as representative of Delpro Co., Dan Miller, individually and as representative of Delpro Co.

v.

Jack WEATHERLOW, individually and Vice Chairman, Brotherhood Railway Carmen Local Affiliate, Delpro Company, Appellant.

No. 81–2475.

United States Court of Appeals, Third Circuit.

Argued April 2, 1982.

Decided April 13, 1982.

William J. Wade (argued), Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., Ray J. Schoonhoven, Valerie J. Hoffman, Douglas A. Darch, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for appellant Delpro Co.

Erick J. Genser (argued), Edward J. Hickey, Jr., Michael S. Wolly, Thomas A. Woodley, Mulholland & Hickey, Washington, D. C., for appellee Brotherhood Railway Carmen.

Joseph J. Farnan, U. S. Atty., Wilmington, Del., J. Paul McGrath, Asst. Atty. Gen., Anthony J. Steinmeyer, Daniel J. Metcalfe (argued), Attys., Civ. Div., Dept. of Justice, Washington, D. C., for appellee National Mediation Bd.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This appeal arises out of a labor dispute involving a wholly owned subsidiary of a company which is itself owned primarily by a group of railroad companies. Based upon this corporate relationship and the services performed by the appellant, the district court found it to be a "carrier" as defined in the Railway Labor Act, 45 U.S.C. § 151 et seq., and thus subject to the jurisdiction

of the National Mediation Board. We affirm.

## I.

On August 20, 1980, the Brotherhood Railway Carmen of the United States and Canada (BRC) requested that the National Mediation Board (NMB) investigate a dispute concerning the representation of employees at Delpro Company (Delpro). Before determining the representation issue, the NMB issued a Determination of Jurisdiction on October 1, 1980, in which it found Delpro to be a carrier within the meaning of the Railway Labor Act and thus subject to its jurisdiction. 8 NMB No. 2 (1980). Two weeks later the NMB denied a Delpro petition for reconsideration, 8 NMB No. 16 (1980), and later proceeded to conduct an election among certain of Delpro's employees that resulted in NMB certification of the BRC as their representative.

Following the denial of the petition for reconsideration, Delpro brought suit in the United States District Court for the District of Delaware seeking declaratory and injunctive relief against the NMB. After first denying the NMB's contention that it lacked subject matter jurisdiction to review the NMB's determination of jurisdiction, the court dismissed the action for failure to join the BRC as defendants. *Delpro Co. v. National Mediation Bd.*, 509 F.Supp. 468 (D.Del.1981). Delpro sued again, on March 11, 1981, joining the BRC and seeking to set aside the NMB's certification of BRC. The following day the BRC filed a separate action to enjoin Delpro from refusing to bargain in good faith. Following consolidation of these actions, the district court, on

August 7, 1981, granted summary judgment in favor of the BRC declaring Delpro to be a carrier. *Delpro v. Brotherhood Ry. Carmen*, 519 F.Supp. 842 (D.Del.1981). On August 28, 1981, it enjoined Delpro to bargain with the BRC. This appeal by Delpro followed.[1]

## II.

■ Both the NMB and the BRC argued in district court, and urge here, that the NMB's determination of its own jurisdiction in this case is not reviewable. The district court rejected that argument, 509 F.Supp. at 472–75, and we do also. Whatever the limitations may be upon judicial review of NMB decisions concerning the division of employees into appropriate classes or crafts or concerning the selection of a ballot for use in a representation election,[2] judicial review of NMB decisions concerning its own jurisdictional authority is not barred. *International Longshoremen's Ass'n. v. North Carolina Port Authority*, 463 F.2d 1, 3 (4th Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 245 (1972); *United States v. Feaster*, 410 F.2d 1354, 1361–62 (5th Cir.), *cert. denied*, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969). Although statutory policy may preclude review of determinations necessarily incident to the NMB's undisputed duty to resolve representation disputes, a decision concerning the Board's own statutory power to act at all should be subject to review absent some clear statutory prohibition.[3] We also agree with the district court, 519 F.Supp. at 845–46, that if the NMB looked to the relevant factors in the administrative record, the court should not disregard the Board's conclusions.[4] And although the court has

---

1. Motions by Delpro to stay the injunction pending appeal were denied by the district court on September 4, 1981, and by this court on September 27, 1981.

2. *See Brotherhood of Railway and Steamship Clerks v. Ass'n. for the Benefit of Non-Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

3. *See* 5 U.S.C. §§ 701–02 (1976) (provisions of Administrative Procedure Act concerning judicial review of agency action and individual rights to such review).

4. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414· 16, 91 S.Ct. 814, 822–823, 28 L.Ed.2d 136 (1971).

the power to apply its own interpretation of the statute, the construction of the statute by the body charged with administering it is generally entitled to deference.[5]  We add only that such deference is not necessarily due when the administrative agency has taken inconsistent positions in the past or when an agency is determining the scope of its own jurisdiction.[6]

## III.

The first two general purposes enumerated in the Railway Labor Act are:

> (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization;
> . . .

45 U.S.C. § 151a (1976).  Disputes arising among a carrier's employees as to who represents such employees in labor negotiations are to be investigated and resolved by the NMB.  45 U.S.C. § 152, Ninth.  Since the Act applies only to carriers, any company subject to NMB's jurisdiction must fall within the definition of "carrier."  That definition reads, in relevant part:

> The term "carrier" includes any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, and any receiver, trustee, or other individual or body judicial or

otherwise, when in the possession of the business of any such "carrier": . . .

45 U.S.C. § 151, First.

Delpro advances three reasons why it should not be found a carrier subject to the jurisdiction of the NMB: (1) the statute's use of "carrier" in the singular form excludes companies that are owned or controlled by a group of carriers; (2) ownership *or* control shall be read as ownership *and* control, and Delpro is not in fact so controlled; and (3) Delpro's services do not satisfy the function requirement of the statute.  We discuss each of these contentions in turn.

## A.

Delpro is one of four wholly owned maintenance subsidiaries of the Trailer Train Company, and its business operations are limited to repair of railroad cars owned by Trailer Train.  The stock of Trailer Train is in turn owned by twenty-nine operating railroads, the trustees of two former operating railroads and one freight forwarding company.  Trailer Train was originally formed, and still functions, as an owner of a pool of railroad flatcars that are leased only to Trailer Train shareholders.  Nearly all of the directors of Trailer Train are senior officers of the railroads owning the stock of Trailer Train.  Its car contracts with the railroads assign the responsibility for maintenance of the leased equipment to Trailer Train—maintenance done in substantial part by Delpro and Trailer Train's other maintenance subsidiaries.

■ Since the stock of Trailer Train is held almost entirely by railroad companies indisputably qualifying as carriers, the district court concluded that Delpro is indirectly owned by a group of carriers by railroad and that such ownership by more than one carrier falls within the meaning of the statute.  519 F.Supp. at 847–48.  The statute

---

**5.**  *E.g., FCC v. WNCN Listeners Guild,* 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981).

**6.**  *National Industrial Sand Ass'n. v. Marshall,* 601 F.2d 689, 698–99 n.32 (3d Cir. 1979).

governing construction of federal statutes, 1 U.S.C. § 1, both in its present version and in the version in effect when the Railway Labor Act was enacted, permits singular words to be read to include the plural unless there is some contrary indication in the context.[7] That rule of construction is especially apt when such interpretation is necessary to carry out the obvious congressional intent. Delpro points to other provisions of the Act that employ both the singular and plural of "carrier" as evidence that Congress intended only the singular in the provision at issue here.[8] These provisions, however, concern the representation of, disputes among, and agreements between carriers and their employees—not relationships of ownership or control. That Congress elsewhere contemplated the possibility of groups of carriers having representation and labor problems in common does not suggest that Congress also contemplated—and deliberately excluded—the possibility of ownership or control of a company by a group of carriers. We agree, to the contrary, with the district court, 519 F.Supp. at 848, that the Act's purpose of avoiding interruption of the operations of carriers would not be furthered by the reading of "carrier" suggested by Delpro. Excluding a company indirectly owned or controlled by a group of carriers while including companies indirectly owned or controlled by a single carrier simply makes no sense, since the potential for disruption to commerce by rail could be as great or even greater in the former case.

### B.

■ Delpro also contends that despite the Act's definition of "carrier" as "any company which is directly or indirectly owned *or* controlled by ... any carrier" (emphasis supplied), actual exercise of control is necessary—*i.e.*, "or" should be read "and." In

support Delpro has cited two earlier NMB decisions that look to factors beyond mere ownership such as the degree of integration between the activities of the parent and subsidiary companies and whether the employees of a subsidiary are employees of the parent. *Eastern Aviation Services, Inc.*, 5 NMB 53 (1970); *Great Lakes Airlines, Inc.*, 4 NMB 5 (1961).

It is indeed the case that these decisions reject mere ownership (direct or indirect) as a sufficient condition to satisfy the "owned or controlled" requirement for NMB jurisdiction. This NMB precedent on the jurisdictional reach of the Act, however, is no bar to a reading of the statute by the district court and by this court according to its plain meaning. After finding that Delpro is indirectly owned by a group of carriers by railroad, the district court went on to consider "the alternative test of being controlled by a group of carriers by railroad," 519 F.Supp. at 848, and concluded that this test was also satisfied. Since we likewise view the tests of ownership and control as truly alternative tests, we need not consider the question of exercise of control.

### C.

■ The final barrier to NMB jurisdiction suggested by Delpro is that the repair and maintenance work done by Delpro employees does not satisfy the function test found in 45 U.S.C. § 151, First: "and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad." As Delpro would have us read this language, a carrier must perform a service with respect to some preliminary or subsequent stage of handling property to be

---

**7.** The present version states, "In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things; ..." Before 1947, it stated, "In determining the meaning of any Act or resolution of Congress, words importing the

singular may extend and be applied to several persons or things; ..." *See First National Bank v. State of Missouri*, 263 U.S. 640, 657, 44 S.Ct. 213, 215, 68 L.Ed. 486 (1924).

**8.** *See* 45 U.S.C. §§ 151, Sixth; 152, Second, Sixth, Ninth, and Eleventh.

transported by railroad—*i.e.*, the transportation or receipt or elevation or storage, etc. of that property *before* or *after* it is transported by railroad. According to Delpro, the district court's description of the function test as "the performance of a service in connection with the transportation of property by railroad," 519 F.Supp. at 848, in effect ignores the statutory mandate that Delpro must itself be directly involved in the transportation, receipt, elevation, storage, etc. of the property to be transported by railroad. Appellant's Brief at 30–34.

This parsing of the statutory language is somewhat plausible, but we cannot overlook the evident intent of the statute. The use of both "transportation" and "transported" cannot be meant to exclude those performing such essential services as repair work connected with the transportation of property by railroad.[9] It is clear that the statute means to extend the definition of "carrier" past those involved in the transportation of property by railroad to those also involved in the receipt, delivery, elevation, etc. of that property. The inclusion of these other jobs along with that of transportation itself evidently required the inclusion of the word "transported" to make the intent clear—*e.g.*, services in connection with the receipt of property transported by railroad. Had it not been for the inclusion of these other job categories, the redundancy of "transportation ... of property transported by railroad" would undoubtedly have been eliminated.

Thus, we endorse the district court's reasoning that inasmuch as maintenance workers employed directly by a carrier would unquestionably be covered by the Railway Labor Act, so also should those workers employed by a subsidiary such as Delpro that is indirectly owned by a group of carriers. 519 F.Supp. at 848–49.

9. Cf. *Despatch Shops, Inc. v. Railroad Retirement Board*, 153 F.2d 644 (D.C.Cir.1946) (maintenance subsidiary of railroad company found to perform vital service "in connection with transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad," for purposes of defining an "employer" under the Railroad Unemployment Insur-

## IV.

The judgment appealed from will be affirmed.

ance Act, 45 U.S.C. § 351). It is instructive to note the inclusion of "passengers" in this definition necessitated separating the job of transportation from the jobs of receipt, delivery, etc. in wording the statute. In so doing, Congress took the opportunity to place "property" in the same phrase as "passengers," thereby eliminating the redundancy found in the Railway Labor Act.