**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO,** Appellant,

v.

**NORTH CAROLINA PORTS AU- THORITY, et al.,** Appellees.

No. 71-2005.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1972.

Decided June 29, 1972.

Julius Miller, New York City (Gleason & Miller, New York City, on brief), for appellant.

Burley B. Mitchell, Jr., Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen. of N. C., on brief), for appellees.

L. Patrick Gray, III, Asst. Atty. Gen., Walter H. Fleischer and Robert M. Feinson, Attys., Dept. of Justice on brief, for The National Mediation Board as amicus curiae.

Daniel R. McLeod, Atty. Gen. of S. C., R. Evan Palmer, Asst. Atty. Gen., and Ellison D. Smith, IV, Columbia, S. C., on brief, for amicus curiae of South Carolina State Ports Authority in Support of North Carolina State Ports Authority.

Before BRYAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

The Railway Labor Act, 45 U.S.C. §§ 151–188, is the fulcrum upon which the International Longshoremen's Association, AFL–CIO, sought an injunction to require the North Carolina State Ports Authority to enter into good faith negotiations to reach agreement concerning rates of pay, rules and working conditions. The injunction was refused and the suit dismissed on the ground of lack of jurisdiction, the District Judge finding that the Authority is not a "carrier" within the intent, and subject to, the provisions of the Act, 332 F.Supp. 95. The union appeals.

Litigation began with the petition of ILA in November, 1968, to the National Mediation Board, stating that a representation dispute existed among the Authority's employees and praying that ILA be certified as employee representative. One of the Board's duties is to investigate and resolve any dispute as to who is the representative of a carrier's employees and to certify the name of the one so designated. 45 U.S.C. § 152, Ninth. The Board, after a hearing on August 5, 1969, finding that the Authority is a carrier within the meaning of the Act and that a representation dispute existed, certified that ILA was the recognized representative of the Authority's employees in the classes of (1) dock and warehousemen and (2) security guards.

The union then asked the Authority to meet with it and discuss changes in employee rules, working conditions, and pay, including pension, welfare and seniority rights. The Authority rejected that request on the ground that, as a State agency, it was forbidden by law to enter into any agreement with a labor union. N.C.Gen.Stat. § 95–98 (Repl. Vol. 1965). Thereupon ILA instituted this suit in the District Court to declare the State statute unenforceable in the face of the Railway Labor Act and to compel the Authority to negotiate.

Over the objection of the union, the District Judge concluded (1) that the order of the Board was reviewable, but (2) that the Authority was not a carrier within the jurisdiction of the Board. The latter conclusion, he felt, rendered inappropriate any resolution of the "other issues presented to the court".

The pertinent facts are as follows. The North Carolina Ports Authority is a State agency operating terminals on State property in the seaports of Morehead City and Wilmington. At each facility freight is received from ships for transfer to line-haul railroads or motor carriers, or received from the trains and trucks for transfer to ships. The Authority operates terminal railroads with its own locomotives over approximately six miles of trackage at Wilmington and three at Morehead City. Each facility has an "interchange" where the Authority's locomotives receive freight cars from line-haul railroads, and where the line-haul railroads pick up cars, loaded and unloaded. One-half of all freight moving through the terminals is carried by the approximately 9,000 railroad cars handled each year by the facilities, and one-half is transported by motor carrier.

There is no tariff for line-haul switching but the Authority does charge either owners or their consignees for loading and unloading rail and truck

shipments. A fee is also required by the Authority for storing and warehousing goods. At Wilmington there are eleven and at Morehead City three employees engaged solely in the operation of railroad equipment. Other Authority employees are engaged as warehousemen, security guards, and office workers. The loading and unloading of ships is done by stevedores who are not employees of the Authority. The Interstate Commerce Commission has never classified the Authority or either of the terminals as an interstate carrier.

■ I. The critical issue in the case is whether, under the Act, the Authority is a "carrier". If it is not, then the Board obviously has no jurisdiction over the controversy. The union contends that the Board's finding that the Authority is a carrier is not reviewable by the court. However, because it is a jurisdictional issue, we think the Board's ruling is reviewable. See, e. g., Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); United States v. Feaster, 410 F.2d 1354 (5 Cir.), cert. denied, 396 U.S. 962, 90 S.Ct. 427, 24 L. Ed.2d 426 (1969).

Nothing in the Railway Labor Act forecloses this inquiry. Despite its citation by the union, Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), is not precedent to the contrary. True, the Court refused to allow court-review of a Board certification. There, however, the issue was not one of jurisdiction, but of the validity of a Board ruling on a substantial subject clearly within its authorized field. The dispute was as to which of two unions was entitled to be the employees' representative. In short, the Court simply refused to allow the "merits of the claim" to be reconsidered on review. Brotherhood of Railway and S. S. Clerks, etc. v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 659, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

*Switchmen's* was distinguished on this head in United States v. Feaster, supra,

410 F.2d at 1361–1362. There, the Court said that *Switchmen's* "does not preclude judicial review of questions of law which bear directly upon the jurisdiction of the Mediation Board." Id. at 1361. *Feaster* commented also upon the possibility that *Switchmen's* had been "undermined", and noted that its "sweeping language" had been narrowed, by the subsequent enactment of the Administrative Procedure Act. Section 10 of the Act provides for review:

" . . . except to the extent that —(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law." 5 U.S.C. § 701.

It further guarantees that:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

The Railway Labor Act does not "preclude judicial review" or commit all action by the Mediation Board to its discretion. Air Line Dispatchers Ass'n v. Nat. Mediation Bd., 89 U.S.App.D.C. 24, 189 F.2d 685, 689 (1951).

Finally, in Barlow v. Collins, supra, 397 U.S. at page 166, 90 S.Ct. at page 837, the Court summarized the question of reviewability of agency action in this way:

"As we said in *Data Processing Service,* preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. Indeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated. . . . " (Citations omitted.)

On this reasoning, we hold that the instant ruling of the National Mediation Board was reviewable by the District Court.

■ II. However, we must disagree with the determination of the District

**4**

Court that the Authority is not a "carrier" within the intendment of the RLA. The Act, 45 U.S.C. § 151, contains this definition:

"First. The term 'carrier' includes any . . . carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, . . . storage, and handling of property transported by railroad . . . ."

This prescription includes State-operated facilities. California v. Taylor, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957).

Here, the Board, applying this definition to the agreed facts, determined that the Authority is a "carrier":

"Although neither of these railroad facilities appear to be certified by the Interstate Commerce Division as an interstate carrier, it is undisputed that the operations of the terminal railroad include the movement of freight to and from freight cars owned by interstate carriers, the switching of railroad cars and the storage of freight moved in interstate and foreign commerce. Title 45, U.S. C.A., Section 151, First, by its terms expressly covers companies 'under common control', with any carrier by railroad . . . ."

Plainly, the Authority is a link in interstate and foreign carriage of shipments controlled by ship and railway companies.

Whether the statutory meaning of "carrier" is a point of law or a question of fact is presently immaterial. If the former, then we think the term includes such facilities as the Authority provided. Nevertheless, if the resolution of the matter be one of fact for the Board, the finding cannot be appraised as without substantial support in the evidence when the agreed modus operandi of the Authority is recalled. Moreover, it is such a finding as is well within the province of the Board.

The judgment dismissing the suit of the union is vacated, and the action reinstated for adjudication of the other controversies between the parties.

Vacated and remanded.