CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT), Plaintiff-Appellant,

v.

NATIONAL MEDIATION BOARD, Defendant-Appellee.

No. 81–1082.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1981.

Decided Dec. 14, 1981.*

Opinion Feb. 12, 1982.

Paul L. Glover, Chicago, Ill., for plaintiff-appellant.

Wendy M. Keats, Dept. of Justice, Washington, D. C., for defendant-appellee.

---

* This appeal was originally decided by unreported order on December 14, 1981. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.**

CUMMINGS, Chief Judge.

This is the second time that the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("Union") has appeared before this Court requesting a reapportionment of the administrative jurisdiction between the National Mediation Board and the National Labor Relations Board. The Union would have us determine that only the National Labor Relations Board has jurisdiction over the certification of labor representatives for the Federal Express Corporation, a chartered Tennessee-based air freight carrier operating a parcel delivery service. For the second time, we affirm the district court's judgment declining that task for want of subject matter jurisdiction.

I

The plaintiff Union would like to represent the truck drivers employed by the Federal Express Corporation at its Elk Grove, Illinois, terminal. In 1974, the Union filed an "Application for Investigation of Representation Disputes" with the National Mediation Board ("NMB"), seeking certification of the Union as the bargaining representative of the Elk Grove truck drivers pursuant to Section 2 Ninth of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 Ninth. The NMB notified the Union that it "does not certify a bargaining representative on a geographical basis. An application for investigation of [a] representation dispute must involve all the employees of the Carrier in the craft or class" (Exhibit 4 to NMB's Motion for Judgment on the Pleadings). Not wanting to represent the entire craft or class of Federal Express truck drivers, assuming that the truck drivers could be separated from other Federal Express employees as a distinct craft or class, the Union abandoned that particular effort for certification.

In a new effort, on August 4, 1977, the Union petitioned the National Labor Relations Board ("NLRB") to hold an election and to certify the Union under the National Labor Relations Act ("NLRA") as the bargaining representative of the Elk Grove and Chicago truck drivers of Federal Express.[1] On August 26, 1977, a Regional Director of the NLRB dismissed the petition, explaining:

> From the investigation, the evidence shows that the Employer [Federal Express] is a carrier subject to the jurisdiction of the National Mediation Board under the Railway Labor Act, 45 U.S.C. Sec. 151 *et seq*. See also *Adams v. Federal Express Corporation*, 547 F.2d 319, 94 LRRM 2008 [6th Cir. 1976]. [Appended to the *Adams* opinion is a 1976 decision of the NMB that Federal Express is a carrier subject to the RLA.] Further, the evidence shows that the Employer's business operations have not substantially changed since the decision of the National Mediation Board, and that the employees involved herein are engaged in work which is an integral part of the Employer's air carrier operations. Under these circumstances, the Employer is not subject to the National Labor Relations Act. *Holston Land Company, Inc.*, 221 NLRB 249.[2]

Appendix at 15.

In March 1978, following the exhaustion of its administrative appeals to the NLRB, the Union filed a complaint in the district court seeking an order requiring the NLRB to exercise authority over the representa-

---

** The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Section 9(b) of the NLRA (29 U.S.C. § 159(b)) empowers the NLRB to determine an appropriate bargaining unit for union representation. The NLRB often limits bargaining units to employees performing narrow tasks located at single geographic areas. See, *e.g., NLRB v. Georgia, Florida, Alabama Transp. Co.*, 566 F.2d 520 (5th Cir. 1978).

2. Sections 2(2) and 2(3) of the NLRA (29 U.S.C. §§ 152(2) and 152(3)) exclude from NLRB regulation employers and employees that are subject to the RLA.

tion dispute and to supervise a representation election. The Union contended that the RLA definition of "carrier" particularly excludes the "trucking service" performed by the Federal Express truck drivers[3] and that therefore the NLRB was incorrect in supposing that the NMB assertion of jurisdiction over Federal Express precluded NLRB jurisdiction over the truck drivers. The district court, however, concluded that the NLRB "did not act in excess of its statutory authority" and dismissed the action for want of subject matter jurisdiction. *Chicago Truck Drivers v. NLRB*, 85 Lab. Cas. ¶ 11,041 (CCH) (N.D.Ill.1978). On appeal, this Court affirmed the district court, holding that "[a]lthough [the Union's interpretation of NMB and NLRB jurisdiction is] somewhat persuasive, we are unable to conclude that the NLRB disregarded a clear, specific, statutory directive when it ruled that the Employer's truck drivers were covered by the RLA." *Chicago Truck Drivers, etc. v. NLRB*, 599 F.2d 816, 820 (7th Cir. 1979) (footnote elaborating persuasiveness of Union argument omitted).

Having failed to have the NLRB accept jurisdiction over the Federal Express truck drivers, the Union again turned to the NMB, which in the meantime had ruled in a different matter involving the International Brotherhood of Teamsters that the truck drivers (denominated couriers therein) were within its jurisdiction. *Federal Express Corp.*, 6 NMB No. 1032 (1978).[4] On April 18, 1980, the Union filed with the NMB a "Petition Requesting a Jurisdictional Determination," requesting that the NMB decline to assert jurisdiction over the Federal Express truck drivers. On April 29, 1980, the NMB responded by letter from its Executive Secretary that it had no authority or desire to reconsider its 1978 decision:

> The subject petition before this Board has not been filed with respect to an application for the investigation of a representation dispute pursuant to Section 2 Ninth of the Railway Labor Act, 45 U.S.C. § 152, Ninth. The National Mediation Board does not issue advisory opinions under the circumstances of this matter. Jurisdictional decisions are reserved for representation cases arising under the Railway Labor Act filed in accordance with the Board's rules, as well as those matters specifically referred to the NMB by the National Labor Relations Board or by a court of competent jurisdiction.

Appendix at 14. The Union still desired to represent only a geographical sub-unit of all Federal Express truck drivers, and accordingly did not file a representation petition to contest the NMB's jurisdictional determination.

Instead, on May 8, 1980, the Union brought a new action in the district court requesting that the NMB's assertion of jurisdiction be set aside as beyond its statutory authority. The Union made the same argument it had used in its prior action against the NLRB, *viz.*, the RLA definition of "carrier" excludes the Federal Express truck drivers. The district court, however, granted the NMB's motion for judgment on the pleadings and dismissed the complaint "for lack of a claim upon which relief can be granted." Appendix at 7. The district court reasoned that (1) the April 29, 1980,

**3.** Section 1 First of the RLA (45 U.S.C. § 151 First) provides in part:

> The term "carrier" includes any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad * * *.

"[C]ommon carrier[s] by air engaged in interstate or foreign commerce," such as Federal Express, are brought within the RLA definition of "carrier" by 45 U.S.C. §§ 181–182.

**4.** That case was brought by the International Brotherhood of Teamsters for the NMB to determine whether the Federal Express Corp. employee classifications encompassed by the Teamsters' application constituted a proper craft or class for purposes of representation under the RLA. An affirmative answer was given by the NMB but the Teamsters failed to proceed with an election.

NMB letter refusing to retract jurisdiction did not constitute "final agency action" that would permit judicial review under Section 10(c) of the Administrative Procedure Act "APA") (5 U.S.C. § 704) and (2) because the NMB did not act "arbitrarily or in disregard of [a] clear, specific, statutory obligation," the exception to non-review established in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, was inapplicable. Appendix at 4, 6–7. The Union now appeals the decision of the district court. We agree with the district court's reasoning and consequently we affirm its dismissal of the Union complaint for lack of subject matter jurisdiction.

## II

■ "The abstract assertion of jurisdiction by an agency is not ordinarily a basis for judicial review." *California Oregon Power Co. v. Federal Power Commission*, 239 F.2d 426, 430 (D.C.Cir.1956). Ordinarily, only *"final* agency action for which there is no other adequate remedy in a court [is] subject to judicial review." APA § 10(c), 5 U.S.C. § 704 (emphasis added). See *United States v. Barr*, 81 LRRM 2219, 2219–2220 (4th Cir. 1972) (*per curiam* ); *United States v. Feaster*, 410 F.2d 1354, 1364 (5th Cir. 1969); *American Air Export & Import Co. v. O'Neill*, 221 F.2d 829, 830 (D.C.Cir.1954).

The Union cites *International Longshoremen's Ass'n v. North Carolina Ports Authority*, 463 F.2d 1 (4th Cir. 1972), as a supposed precedent for applying in these circumstances the standard contained in Section 10(a) of the APA (5 U.S.C. § 702) that any "person suffering legal wrong because of agency action * * * is entitled to judicial relief thereof." *International Longshoremen's Ass'n* held that a federal court has power to review the NMB's jurisdictional determination that an employer is a "carrier" within the RLA, following the proper invocation of NMB processes and the subsequent NMB certification of a bargain-

ing representative. See also *Air Canada v. NMB*, 478 F.Supp. 615 (S.D.N.Y.1980), *aff'd mem.*, 659 F.2d 1057 (2d Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 506, 70 L.Ed.2d 381. But in both those cases there was final agency action within Section 10(c) of the APA.[5] Judicial review under Section 10(a) (5 U.S.C. § 702) is of course qualified by Section 10(c) (5 U.S.C. § 704) and accordingly is inappropriate when as here the questioned agency action is not final.

■ To determine whether an agency action is to be deemed "final" for purposes of judicial review, we look "in a pragmatic way" to whether the challenged agency action is "definitive" and to whether it has a "direct and immediate ... effect on the day-to-day business" of the challenger. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 151, 152, 87 S.Ct. 1507, 1515, 1516, 1517, 18 L.Ed.2d 681). The Union argues that the assertion of jurisdiction by the NMB is definitive because, as a local union, it is unable to initiate the NMB machinery and therefore there can be no further agency proceedings on the matter. Thus, according to the Union, the purpose of avoiding premature judicial interference into agency action would not be disserved by review at this stage.

But it is not enough that agency action be definitive or "finished" with respect to some challenger. Similar to the requirement of standing, there must also be some "hardship to the parties of withholding court consideration," *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, determined by whether the agency action has a "direct and immediate effect" upon the challenger's day-to-day business. The Union is not directly and immediately affected by the NMB jurisdiction because it seeks to represent Federal Express truck drivers operating in a

---

**5.** See also *Delpro Co. v. National Mediation Board*, 509 F.Supp. 468, 472–474 (D.Del.1981), where the district court, after considering *International Longshoremen's Ass'n*, drew the same distinction as we do between judicial review of the initial assertion of NMB jurisdiction and judicial review following NMB certification of a bargaining representative. The *Delpro* court stated (in dictum) that only the latter is reviewable.

small geographical region, and NMB regulation applies only to those more ambitious labor representatives capable of representing an entire craft or class. The Union was more directly and immediately affected by the NLRB's decision that it had no jurisdiction, since had the reviewing court reversed the NLRB's decision not to accept jurisdiction the Union could then have used the NLRB machinery in attempting to represent the local truck drivers. Here, if the NMB assertion of jurisdiction were overturned, it would not follow that the NLRB must accept jurisdiction. *Chicago Truck Drivers, etc. v. NLRB*, 599 F.2d 816 (7th Cir. 1979).

The Union contends that it was directly and immediately affected by the NMB assertion of jurisdiction because the NLRB relied upon the NMB's assertion without making any independent findings. Therefore, it is claimed that the NLRB is likely to accept jurisdiction if we hold the NMB has none. Assuming that NLRB reliance on the NMB's assertion of jurisdiction is relevant,[6] we disagree with the Union's contention. The NLRB has not unduly relied upon the NMB and hence the decision-making of the two agencies is not so interlocked that the NMB assertion of jurisdiction can produce—via the NLRB—a direct and immediate effect on the Union.

The NLRB letter to the Union dated August 26, 1977, states that the NLRB "carefully investigated and considered" the question and found that the truck drivers "are engaged in work which is an integral part of the Employer's air carrier operations." Appendix at 15. Congress intended in enacting and maintaining the RLA separately from the other labor laws "[t]o avoid any interruption to commerce or to the operation of any carrier engaged therein." 45 U.S.C. § 151a. The likelihood of such interruptions would be increased by having the carrier-employer bargain with a multitude of local unions. See *Switchmen's Union of North America v. National Mediation*

Board*, 135 F.2d 785, 796 (D.C.Cir.1943), *rev'd on other grounds*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. Accordingly, the NLRB finding that the truck drivers form an "integral part" of the carrier's whole operation is certainly probative and perhaps dispositive of whether they should be included within the NMB scheme of allowing only one union to represent the carrier's entire craft or class. Even if the NLRB did rely somewhat upon the NMB's interpretation of the RLA, "[t]he interpretation put on the statute by the agency charged with administering it is entitled to deference * * *." *Federal Election Commission v. Democratic Senatorial Campaign Committee*, —— U.S. ——, ——, 102 S.Ct. 39, 42, 70 L.Ed.2d 23; see also *National Labor Relations Board v. Bell Aerospace*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134; *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616.

■ We conclude that the NMB assertion of jurisdiction had no direct and immediate effect upon the Union's day-to-day business and consequently was not final agency action within the meaning of Section 10(c) of the APA (5 U.S.C. § 704).

### III

Our decision that NMB assertion of jurisdiction is not final agency action does not preclude all judicial review. The Supreme Court in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, created an exception to the unreviewability of non-final NLRB action that the Union argues is applicable in this case. We have interpreted this exception as giving the district court jurisdiction "to examine on its merits a petitioner's contention that the NLRB had made an error of law, [although] this examination should be made with relatively lax scrutiny. Jurisdiction is not present simply because the NLRB has made an error of law in a certification proceeding; jurisdiction is warranted only if the NLRB has violated a clear and specific statutory di-

---

6. The argument really goes to the quality of the NLRB's decision not to assert jurisdiction, previously held to be unreviewable. *Chicago Truck Drivers, etc. v. NLRB*, 599 F.2d 816 (7th Cir. 1979).

rective." *Chicago Truck Drivers, etc. v. NLRB*, 599 F.2d 816, 819 (7th Cir. 1979); see also *Physicians National House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir.1980) (*en banc*), certiorari denied, 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342; *Rockford Redi-Mix Co., Inc. v. Zipp*, 632 F.2d 30, 31 (7th Cir. 1980), certiorari denied, 450 U.S. 929, 101 S.Ct. 1388, 67 L.Ed.2d 362.

The *Leedom v. Kyne* exception to non-review has been extended to reviewing non-final actions of the NMB, *e.g., United States v. Feaster*, 410 F.2d 1354, 1364 n.9, 1366–1368 (5th Cir. 1969), but it does not apply in this case. The jurisdictional line between the NLRB and NMB is drawn by one statutory question: is the "trucking service" unit of Federal Express excluded from NMB jurisdiction by Section 1 First of the RLA (45 U.S.C. § 151 First)? Both agencies determined the question identically, and we held in *Chicago Truck Drivers, etc. v. NLRB*, 599 F.2d 816 (7th Cir. 1979) that the NLRB determination did not violate a clear and specific statutory directive. Absent some difference in the facts presented to the two agencies, we must conclude that the NMB did not violate a clear and specific statutory directive either, and that the *Leedom v. Kyne* exception to non-review is inapplicable.

To be sure, this holding gives considerable latitude to the NMB and NLRB to divide their respective jurisdictions—at least in the abstract—prior to initiation of their statutory processes. When jurisdiction is given to the NMB, unless the jurisdictional division runs afoul of a clear and specific statutory directive, local unions unable to represent an employer's whole craft or class of employees will be without judicial review. Although this result may seem harsh, it comports with the recent Supreme Court decision of *Federal Election Commission v. Democratic Senatorial Campaign Committee*, —— U.S. ——, ——, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 defining the defer-

ence to be given to the Federal Election Commission's construction of its enabling statute:

[I]n determining whether the Commission's action was "contrary to law," the task for the Court of Appeals was not to interpret the statute as it thought best but rather the narrower inquiry into whether the Commission's construction was "sufficiently reasonable" to be accepted by a reviewing court. *Train v. Natural Resources Defense Council*, 421 U.S. 60, 75 [95 S.Ct. 1470, 1480, 43 L.Ed.2d 731] (1975); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 [98 S.Ct. 2441, 2445, 57 L.Ed.2d 337] (1978). To satisfy this standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 [98 S.Ct. 2441, 2445, 57 L.Ed.2d 337] (1978); *Udall v. Tallman*, 380 U.S. 1, 16 [85 S.Ct. 792, 801, 13 L.Ed.2d 616] (1965); *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 153 [67 S.Ct. 245, 250, 91 L.Ed. 136] (1946).

The Federal Election Commission is a young, relatively inexperienced agency and its statutory interpretations might have been allowed a lesser measure of respect. See 2 K. C. Davis, Administrative Law Treatise § 8:4, at 167–174 (1979). In this case we show deference to the joint interpretation of two, older and more experienced agencies, the NLRB and the NMB, by holding unreviewable on these pleadings their judgment as to the proper limits of their dovetailed statutory mandates.[7]

Accordingly, we affirm the district court's decision to dismiss for lack of subject matter jurisdiction.

---

7. The Declaratory Judgment Act (28 U.S.C. §§ 2201–2202) would be of no avail to plaintiff unless it can assert an independent jurisdictional base (*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194) such as 28 U.S.C. § 1337. Plaintiff has not relied on the Declaratory Judgment Act in the complaint or its brief before us.