**JEROME MILTON, INC., and Jerome
Milton Schulman, Plaintiffs,**

v.

**FEDERAL TRADE
COMMISSION, Defendant.**

No. 89 C 3941.

United States District Court,
N.D. Illinois, E.D.

March 12, 1990.

Maurice P. Raizes, Cornelius P. Brown, Cohon Raizes & Regal, Chicago, Ill., for plaintiffs.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Jerome Milton, Inc., a corporation engaged in the promotion and sale of health care products, and its president, Jerome Milton Schulman, brought this lawsuit to challenge certain conduct by the Federal Trade Commission (the "FTC" or "Commission"). Pending is the FTC's motion for summary judgment on the grounds that there has been no final agency action and, alternatively, that the dispute is not ripe for review. The Court agrees with the FTC that the letter is not final agency action and therefore dismisses the case for want of jurisdiction.

### II. FACTS

The essential facts relevant to the pending motion are not in dispute. Plaintiffs manufacture and sell a product called Shane toothpaste. On September 24, 1984, the FTC issued an administrative complaint against plaintiffs, alleging that they had violated §§ 5 and 12 of the FTC Act, 15 U.S.C. §§ 45, 52.[1] The administrative complaint alleged that plaintiffs unfairly and deceptively represented, directly or by implication, that they had a reasonable basis for the following representations in their advertising of Shane toothpaste:

a. the use of Shane will cure, or alleviate the symptoms of, canker sores (recurrent aphthous stomatitis), cold sores (herpes simplex type I lesions), and the gum problems associated with gingivitis and periodontitis;

b. Shane is superior to other toothpastes in reducing or eliminating plaque; and

c. the use of Shane will lessen the sensitivity of the teeth to hot and cold substances.

(Complaint, Ex. A at ¶ 5.)

In accordance with § 5(b) of the FTC Act,[2] the administrative complaint was accompanied by a notice stating that a hearing would be held on November 5, 1984, and that the FTC had reason to believe that an order should issue that plaintiffs cease and desist making the representations at issue,

unless at the time of making such representation, respondents possess and rely upon competent and reliable evidence substantiating the representation. For purposes of this order, "competent and reliable evidence" shall mean a test, analysis, research project, or study in

---

1. Section 5 of the Act prohibits "unfair or deceptive acts or practices in or affecting commerce" and authorizes the FTC to enforce this prohibition. Section 12 provides that the dissemination of a false advertisement constitutes an unfair or deceptive act or practice in or affecting commerce.

2. "Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint. The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the Commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint.... If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice." 15 U.S.C. § 45(b).

which the evidence has been objectively obtained and evaluated by persons qualified to do so, using procedures generally accepted in the relevant profession to yield accurate results.

(Complaint, Ex. A at 5.)

After three years of litigation before the FTC which plaintiffs describe as "financially exhaustive" (Complaint, ¶ 10), and during which plaintiffs voluntarily refrained from advertising Shane toothpaste, plaintiffs entered into settlement negotiations with the FTC. A proposed consent order was agreed to by plaintiffs and counsel for the FTC which contained the precise substantiation language of the order which the FTC had originally sought. On April 9, 1987, the Commission rejected this consent order.[3]

A consent order was eventually reached which the Commission approved on October 26, 1987. Plaintiffs were ordered, in part, to:

cease and desist from representing, directly or by implication, that any such [oral hygiene] product:

a. cures or alleviates the symptoms of canker sores (recurrent aphthous stomatitis) or cold sores (herpes simplex type I lesions);

b. reduces the sensitivity of teeth to hot and cold substances;

c. is useful in the diagnosis, cure, mitigation, treatment, or prevention of disease in man;

d. reduces plaque more effectively than any other toothpaste or oral hygiene product; or

e. cures or alleviates the gum problems associated with gingivitis or periodontitis,

unless at the time of making such representation, respondents possess and rely upon competent and reliable evidence that substantiates the representation.

*For purposes of paragraphs a and b, above, "competent and reliable evidence" shall include at least one adequate and well-controlled, double-blind clinical study that conforms to accepted designs and protocols and is conducted by persons qualified by training and experience to do so;*

For purposes of paragraphs d and e, above, "competent and reliable evidence" shall include at least two adequate and well-controlled, double-blind clinical studies that conform to accepted designs and protocols and are conducted by different persons, independently of each other, with such persons being qualified by training and experience to conduct such studies;

For purposes of paragraph c, above, "competent and reliable evidence" shall mean test(s), analysis(es), research project(s), or study(ies) in which the evidence has been objectively obtained and evaluated by persons qualified to do so, using procedures generally accepted in the relevant profession to yield accurate results.

(Complaint, Ex. D at 2–3, emphasis added.) The final consent order thus retained essentially the same requirements for substantiation of the certain claims, including the sensitivity claims which are central to this case, but increased the requirements for substantiation of other claims. As part of the settlement, plaintiffs also agreed to file a compliance report within 60 days. (Def. Ex. 1.)

Meanwhile, in July of 1986, plaintiffs had commissioned the University of Iowa to conduct a clinical study concerning Shane's ability to reduce the sensitivity of teeth to temperature and pressure. Plaintiffs received the results of this study in March,

---

**3.** Pursuant to 16 C.F.R. § 2.32, a settlement agreement is not final until accepted by the Commission. Chairman Oliver dissented from the decision, stating in part:

If the respondents ... had simply defaulted in the Commission's suit, it is extremely unlikely that the Administrative Law Judge would have felt free to enter an order with provisions different from those contained in the notice order issued by the Commis-

sion.... Instead of defaulting, however, the respondents entered into consent negotiations and basically offered to capitulate completely to the Commission's terms.

Having succeeded in its original purpose the Commission now intends to demand a more burdensome substantiation requirement than it sought when the complaint and notice order were issued. Why?

(Complaint, Ex. C.)

1987. The study concluded that "Shane toothpaste is effective in reducing dental sensitivity to both cold and pressure when used regularly as an adjunct to daily oral hygiene procedures."[4]

On December 18, 1987, plaintiffs submitted their written compliance report to the FTC. In that report, they stated that they had not advertised Shane toothpaste. They also submitted with the report a copy of the University of Iowa study.

From January through April, 1988, several telephone conversations took place between Mr. Schulman and Rose Toufexis, a Commission staff attorney. During these conversations, Mr. Schulman stated an intent to begin advertising that Shane could reduce dental sensitivity. Ms. Toufexis stated that the University of Iowa study had been submitted to two independent experts for their evaluation and that they had concluded that the study did not constitute competent and reliable evidence that Shane toothpaste could reduce dental sensitivity. Mr. Schulman requested that Ms. Toufexis identify the two independent experts, explain the basis for the conclusion that the study was not competent and reliable evidence, and state whether the independent experts had conducted similar double blind studies. She refused to identify the independent experts. The parties dispute whether she discussed the bases for the conclusion that the University of Iowa study was not competent and reliable evidence.

In April, 1988, plaintiffs submitted a one-page report of a study which had been used as a pilot study for the study submitted in December. The FTC submitted this study to the two independent experts for evaluation. On October 31, 1988, Ms. Toufexis sent a letter to Mr. Schulman advising that the two independent experts had concluded that the two studies

> do not constitute competent and reliable evidence that Shane toothpaste reduces

the sensitivity of teeth to cold and pressure. Accordingly, staff is of the opinion that any such representations made for Shane would lack adequate substantiation under Part I of the Commission order.

(Complaint, Ex. F.) In a later dated July 6, 1989, the Commission itself informed Mr. Schulman that:

> The Commission has reviewed the report of compliance and has concluded, based on the absence of any advertising, and on the assumption that the information submitted is accurate and complete, that no compliance action by the Commission is indicated at this time.
>
> The Commission, however, wishes to make clear that the studies submitted by you to support your claim that the product is effective in reducing tooth sensitivity are inadequate. Therefore you are cautioned that any future advertising must be supported by adequate substantiation. The Commission may consider instituting appropriate action should you resume making claims covered by Part I of the order without adequate substantiation.

(Complaint, Ex. G.)

On May 12, 1989, plaintiffs instituted this federal lawsuit, alleging that the FTC's action was arbitrary, capricious, and inconsistent with the consent order.[5] As relief, plaintiffs seek a declaratory judgment that the "FTC opinion regarding the Iowa Sensitivity Studies is inconsistent with the Consent Order and therefore has no force and effect," that the studies constitute "competent and reliable evidence" within the meaning of the consent order, and that plaintiffs may rely on the studies in making advertising claims.

### III. ANALYSIS

The doctrines of finality, ripeness and exhaustion[6] are all implicated when an

---

4. The Court notes that the study also emphasized difficulties in measuring pressure and temperature sensitivity, and that the study was inconclusive concerning the precise cause of the reduced sensitivity, which may have been fluoride and/or the hygiene regime imposed on the test subjects.

5. The July 6, 1989 letter was the subject of an additional allegation included in an amended complaint.

6. The FTC has not argued that plaintiffs have not exhausted administrative remedies.

agency is sued and defends on the ground that the suit is premature because of the nature of the agency action being challenged or the stage of the agency's proceedings. These three doctrines overlap to an extent, and the differences between them are not always clear in the case law.[7] Ripeness and exhaustion are prudential considerations, with ripeness focusing on the fitness of the issues for judicial review and exhaustion focusing on the steps which the litigant must follow. Finality is a jurisdictional consideration which focuses on the definitiveness and effect of the challenged action. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 3119–20, 87 L.Ed.2d 126 (1985); *Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731, 735 (D.C.Cir. 1987) (opinion of Edwards, J.); *Ticor*, 814 F.2d at 745–46 (opinion of Williams, J.); *Ticor*, 814 F.2d at 755 (opinion of Green, J.). Because finality concerns the Court's jurisdiction, the Court examines this issue first.

Section 10(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review...." Plaintiffs have not argued that the agency action[8] at issue here is "made reviewable by statute," so the relevant inquiry is whether it is "final agency action for which there is no other adequate remedy in a court."

Finality is a flexible concept which must be applied in a pragmatic way. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980). The Supreme Court has not pronounced a universal test for determining when agency action is final. In *Abbott Laboratories v.*

*Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Court found the publication of regulations to be final agency action. As later described by the Court in *Standard Oil*, the regulations were determined to be final because they:

were "definitive" statements of the Commission's position and had a "direct and immediate ... effect on the day-to-day business" of the complaining parties. They had "the status of law" and "immediate compliance with their terms was expected." In addition, the question presented by the challenge to the regulations was a "legal issue ... fit for judicial resolution." Finally, because the parties seeking the declaratory judgment represented almost all the parties affected by the regulations, "a pre-enforcement challenge ... [was] calculated to speed enforcement" of the relevant Act.

449 U.S. at 239–40, 101 S.Ct. at 493, quoting *Abbott Laboratories*, 387 U.S. at 151–54, 87 S.Ct. at 1516–18.

In *Standard Oil*, the Court determined that the issuance of an administrative complaint stating that the FTC had reason to believe that a company was committing a violation did not constitute final agency action. The Court emphasized that the complaint was "not a definitive statement of position" but rather a "threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." 449 U.S. at 241, 101 S.Ct. at 493. The Court further noted that the issuance of the complaint had

no legal force comparable to that of the regulation at issue in *Abbott Laboratories*, nor any comparable effect upon [the plaintiff's] daily business.... Although th[e] burden [of responding to the charges] certainly is substantial, it is dif-

---

**7.** An interesting example of the difficulties in distinguishing and applying the three concepts is *Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731 (D.C.Cir.1987), in which a three-judge panel found that a challenge to FTC action was premature and dismissed the case. Each of the three judges filed a separate opinion. One concluded that the administrative remedies had not been exhausted, one concluded that the agency action was not final, and one concluded that the matter was not ripe for judicial review.

**8.** The Court assumes for purposes of this opinion that the agency conduct challenged by plaintiffs constitutes "action" by the agency. The FTC argues that there has been no agency action within the meaning of the APA, which states that "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). *See also FTC v. Standard Oil Co.*, 449 U.S. 232, 238 n. 7, 101 S.Ct. 488, 492 n. 7, 66 L.Ed.2d 416 (1980).

ferent in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action.

*Id.* at 242, 101 S.Ct. at 494. Finally, the Court stated that allowing review of the issuance of the complaint would interfere with the proper functioning of both the agency and the courts:

> Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. Furthermore, unlike the review in *Abbott Laboratories,* judicial review to determine whether the Commission decided that it had the requisite reason to believe would delay resolution of the ultimate question whether the Act was violated. Finally, every respondent to a Commission complaint could make the claim that [the plaintiff] had made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes.

*Id.* at 242–43, 101 S.Ct. at 494.

The Supreme Court opinions make it clear that finality is determined not by a rigid test, but by examination of a number of factors, including the definitiveness of the agency action, the legal and practical effect of the action upon the challenger, the fitness of the issues for judicial resolution, and concern for the proper roles of the agency and the court. *See also Chicago Truck Drivers v. National Mediation Board,* 670 F.2d 665, 668–69 (7th Cir.1981) (assertion of jurisdiction by National Mediation Board was not final agency action where it was not definitive and did not have direct and immediate effect upon plaintiff's day-to-day business).

An examination of the relevant factors as applied to this case leads the Court to the conclusion that the agency's action is not final. The action which plaintiffs chal-

lenge is the FTC's "rejection" of the Iowa studies which plaintiffs submitted. This action cannot be viewed as definitive. The Commission's July 6 letter stated that "no compliance action by the Commission is indicated at this time" and that if plaintiffs resumed their advertising, "[t]he Commission may consider instituting appropriate action." Such "appropriate action" would presumably be the filing of another administrative complaint. Because the filing of a complaint is not definitive, as *Standard Oil* makes clear, a letter warning that such a complaint may be filed cannot be viewed as definitive. *See also Board of Trade v. S.E.C.,* 883 F.2d 525, 529 (7th Cir.1989) (letter expressing intent not to prosecute at the time, so long as certain conditions are satisfied, is too tentative to be final agency action).

■ Plaintiffs argue that the letters are definitive because there is no reasonable possibility that the agency will change its mind. In plaintiffs' words: "One observing a falling object does not have to see it strike the ground to know that it will. Similarly, Plaintiffs do not actually have to advertise in reliance on the Iowa Sensitivity Studies to know the FTC will file an enforcement action against them." (Mem. in Response at 6 n. 4.) Similar arguments have often been rejected in the case law. *See, e.g., Ticor,* 814 F.2d at 747 (opinion of Williams, J.) (fact that Commission is unlikely to change its position does not make its action final).[9] The Court agrees that the unlikelihood of any change in position by the agency upon the culmination of the administrative process is not ground for reviewing otherwise non-final agency action concerning the merits of the dispute. To allow judicial review whenever the final outcome appears to be predictable would completely decimate the finality rule and destroy the judicial review process contemplated by Congress.

Plaintiffs further contend that this case is not governed by *Standard Oil* because, unlike *Standard Oil,* an administrative proceeding was already initiated and concluded, and the challenged action is a defin-

---

**9.** *Cf. Air California v. U.S. Dept. of Transportation,* 654 F.2d 616, 620 (9th Cir.1981) (agency action not final despite letter indicating intent to pursue sanctions unless certain steps were taken).

itive agency interpretation of the resulting consent order. The Court does not view as significant the fact that one administrative proceeding has already been initiated and settled. The first proceeding does not render the letters at issue here any more definitive. The letters themselves are not the culmination of the first proceeding, but are rather an independent determination concerning studies that were not in issue in the first proceeding. The letters clearly contemplate the necessity of an additional administrative complaint and further proceedings at which time plaintiffs would have the right to present their own evidence and arguments to an administrative law judge. The letters are merely precursors to the administrative complaint which is contemplated if plaintiffs renew their advertising claims. They therefore represent a stage in the administrative process which precedes even the type of complaint which *Standard Oil* found not to be final.

■ The Court further finds that the effect of the Commission's actions on plaintiffs is not the type of direct and immediate effect on the plaintiffs' business that ordinarily supports a finding of finality. Plaintiffs certainly are justified in interpreting the letters as a direction that they should not, based solely on the University of Iowa studies, resume the advertising claims which originally drew the Commission's attention, and in that sense the Commission's view of the studies has an immediate effect on plaintiffs' business. This effect, however, does not rise to the level normally required for finality. It is not an official

agency pronouncement with the effect of law requiring plaintiffs to take any action, nor is it a pronouncement of industry-wide application. It is merely a warning that administrative proceedings may be commenced against plaintiffs.[10] In *Standard Oil*, the Court stated that an averment of reason to believe that a violation had occurred did not have the legal effect of promulgation of regulations, but rather imposed only the burden of responding to the charges, which was an insufficient effect to support a finding of finality. 449 U.S. at 242, 101 S.Ct. at 494. The letters challenged by plaintiffs do not "impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process," as the Court has stated is necessary in order for agency action to be final. *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112–13, 68 S.Ct. 431, 436–37, 92 L.Ed. 568 (1948). Rather, this case is similar to *Air California v. U.S. Dept. of Transportation*, 654 F.2d 616, 621 (9th Cir.1981),[11] in which a letter issued by the FAA's chief counsel which announced certain conclusions and threatened future enforcement action and which was determined not to be final agency action because it was even less determinate than the filing of the complaint in *Standard Oil*.

■ It is also well settled that the burden of defending an agency enforcement proceeding is not the type of direct and immediate effect necessary for agency action to be final. *See Standard Oil*, 449 U.S. at 244, 101 S.Ct. at 495.[12] *See also*

**10.** The Court notes that agency procedures concerning advice letters specifically state that such letters are not definitive:

Any advice given by the Commission is without prejudice to the right of the Commission to reconsider the questions involved and, where the public interest requires, to rescind or revoke the action....

16 C.F.R. § 1.3(b).

**11.** Plaintiffs rely on a footnote in which the *Air California* court noted that "FAA letters indicating that proposed structures constitute 'no hazard' to air traffic represent a definitive statement of the FAA's position on proposed construction and have been found reviewable. *See Rochester v. Bond*, 603 F.2d 927 (D.C.Cir.1979); *Air Line Pilots Assoc. Int'l v. U.S. Department of Transportation*, 446 F.2d 236 (5th Cir.1971)."

*Air California*, 654 F.2d at 621 n. 6. Rather than support plaintiffs' position, the cases cited by *Air California* involved very different circumstances and thus, by comparison, demonstrate the deficiencies in plaintiffs' complaint. In *Rochester* and *Air Line Pilots*, the challenged letters were the culmination of extensive agency procedures and the agency intended the letters to be definitive conclusions, with no further agency action contemplated.

**12.** As the Supreme Court noted, even substantial and unrecoupable litigation costs do not constitute irreparable injury. 449 U.S. at 244, 101 S.Ct. at 495. Furthermore, the APA specifically provides that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of

*Ticor,* 814 F.2d at 740 (opinion of Edwards, J.); *Ticor,* 814 F.2d at 746–47 (opinion of Williams, J.). Furthermore, the fact that civil or criminal penalties may be assessed as a result of the administrative procedures, which could be avoided if plaintiffs' pre-emptive challenge were successful, does not alter this analysis. *See Floersheim v. Engman,* 494 F.2d 949, 952 (D.C. Cir.1973) (possible penalties do not require expeditious review of FTC advisement that conduct violated cease and desist order, because criminal contempt is not appropriate where there is good faith disagreement and civil penalties allow room for leniency if violator's view is plausible). Because the letters constitute only preliminary determinations with no legal force, but rather subject plaintiffs only to the burden of contesting their claims in the administrative process should they choose to advertise, the letters cannot be viewed as having a sufficient effect on plaintiffs to qualify as final agency action.

Furthermore, the agency's "rejection" of the letters is not an issue that is amenable to judicial review at this time. In order to determine whether the studies are sufficient to satisfy the consent order, the Court would need to receive evidence concerning the studies themselves along with any other applicable studies and expert testimony. In doing so, the Court would have to begin with a clean slate, without the benefit of a full administrative record. This is a task which Congress has assigned to an agency which has a special expertise in this area. If the agency is not allowed to develop a record based on that expertise, the issues are not presented to the Court in a form sufficient for the proper exercise of its judicial function.

For similar reasons, exercise of judicial review at this stage would interfere with the proper relationship between the judiciary and the agency. The agency has not had an opportunity to perform the adversary administrative proceedings contemplated by the APA and the agency's governing statute. It has not had a full opportunity to apply the expertise which it has in the area of trade practices. Judicial review

at this stage would bypass the entire agency process envisioned by Congress. *See Standard Oil, supra,* 449 U.S. at 242, 101 S.Ct. at 494.

There are certain exceptions to the normal finality requirement, although courts rarely find these exceptions to apply. One commonly identified exception is where the agency has "violated a clear and specific statutory directive." *Chicago Truck Drivers,* 670 F.2d at 669–70. *See also Ticor,* 814 F.2d at 749 (opinion of Williams, J.). Plaintiffs have alleged no such violation in this case.

A special category of agency action arises where the challenge is unrelated to the merits of the dispute, but rather concerns the very assertion of agency jurisdiction or authority or the procedures utilized by the agency. Whether this type of action is viewed as final in itself or as an exception to the finality requirement, it is often considered judicially reviewable before the culmination of administrative proceedings. *See, e.g., Ciba–Geigy Corp. v. U.S. Environmental Protection Agency,* 801 F.2d 430 (D.C.Cir.1986); *Atlantic Richfield Co. v. U.S. Dept. of Energy,* 769 F.2d 771 (D.C. Cir.1984); *Athlone Industries v. Consumer Products Safety Comm'n,* 707 F.2d 1485, 1489–90 n. 30 (D.C.Cir.1983). The *Ciba–Geigy* case, which plaintiffs contend supports their position, is instructive. The plaintiff challenged a letter from an EPA official which stated the agency's position with respect to the labelling of certain products, stated that labels which did not conform would be subject to enforcement actions, and stated that the agency disagreed with the plaintiff's position that notice and hearing procedures were required. The Court found that the agency action was final, emphasizing that the plaintiff's complaint raised only the issue of what procedures were proper and did not challenge the merits of the EPA's labelling requirements. 801 F.2d at 435. In this case, in contrast to *Ciba–Geigy* and similar cases, the review sought by plaintiffs directly concerns the merits of the trade practices at issue.

the final agency action." *Id.* at 245, 101 S.Ct. at 496, quoting 5 U.S.C. § 704.

Plaintiffs also submit that this case is governed by *Natural Resources Defense Council, Inc. v. Thomas,* 845 F.2d 1088, 1094 (D.C.Cir.1988). In that case, the EPA had previously promulgated rules concerning the appropriate method for determining average concentrations of air pollutants. Those rules had been invalidated by the court. The EPA did not promulgate new rules, but the Director of the EPA's Office of Air Quality Planning and Standards did issue a memorandum declaring that the EPA had concluded that block averages were proper. Although the court found that this memorandum was unreviewable for other reasons, it found that the memorandum constituted final agency action. The court stated that the memorandum "establishes block averages as the only officially proper method." 845 F.2d at 1094. The court noted the general rule that action by subordinate agency officials is not final agency action, but it found the case before it to be an exception:

> In this case where the subordinate is the director of the relevant component unit of the administration, where no further action by the administrator is directly implicated, and where no further proceedings are noticed, it would appear that subordinate employees of the agency and, more importantly, cooperating state components of the compliance effort would be justified in construing the memorandum to be their marching orders.

*Id.* The case before this Court is different for many of the precise reasons identified by the court in *Natural Resources.* Here, unlike that case, further action by the agency is contemplated, and the agency's action is not a broad policy statement which will be immediately enforced in an industry.

On the other hand, this case is very similar to *Floersheim, supra,* in which the FTC had previously ordered the plaintiff to cease and desist from practices concerning the use of certain forms and to file a compliance report. The plaintiff subsequently filed a compliance report, including revised forms, which was rejected by the FTC. The plaintiff then brought a lawsuit in federal district court, seeking a declaratory judgment that the revised forms satisfied the cease and desist order and an injunction restraining the FTC from seeking civil non-compliance penalties. The court of appeals concluded that the FTC's action was not reviewable through such a lawsuit. *See also Biotics Research Corp. v. Heckler,* 710 F.2d 1375 (9th Cir.1983) (agency letter advising plaintiffs that they were violating federal law and threatening enforcement action was not final agency action); *General Finance Corp. v. FTC,* 700 F.2d 366 (7th Cir.1983) (subjects of FTC investigation could not bring suit to end investigation, but must wait for agency to bring compliance proceedings and then exercise judicial review procedures provided by statute).

■ The Court finds that in view of all of the applicable precedents and the relevant factors, the FTC's letters advising plaintiff that the studies do not satisfy the consent order are not subject to judicial review before the completion of FTC enforcement proceedings.

## IV. CONCLUSION

The Court finds that the letters sent by the Commission and the Commission's staff did not constitute final agency action. Accordingly, the Court does not have jurisdiction, and the case is dismissed. Because of this conclusion, the Court does not reach the Commission's alternative argument that the issue is not ripe for review, although many of the factors considered in this opinion would also countenance against a finding that the agency's action is ripe.